[No. A057147. First Dist., Div. Three. May 25, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
HIEU CHI NGUYEN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

Arthur Lang Wong, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WERDEGAR, J.**—Hieu Chi Nguyen appeals from a sentence imposed on convictions for two counts of robbery (Pen. Code, § 211)[1] and one count of assault with a firearm (§ 245, subd. (a)(2)). We remand for the trial court to consider whether Nguyen should be transferred to the California Youth Authority for purposes of housing and rehabilitation. (Welf. & Inst. Code, § 1731.5, subd. (c).)

### FACTS

Anh Le and her brother Danh were working in their family's restaurant; Anh was at the cash register and Danh, along with Giang Nguyen and

---

[1]All further statutory references are to the Penal Code unless otherwise specified.

another man, was in the kitchen. Three young men, one of whom Anh Le identified as defendant, had dinner. After they finished, defendant approached Anh at the register to pay their bill.

As Anh gave defendant his change, he displayed a handgun and told her to raise her hands. When she complied, he fired a shot at the ceiling, then walked around the register and pushed Anh to the floor. Hearing the noise, Danh started to come out from the kitchen. Defendant fired at him through the doorway, hitting him in the arm.

As Danh was lying injured on the kitchen floor, he saw a man come into the kitchen from the back storage area and say, "Give me everything." The man threatened to shoot Giang Nguyen if he did not comply. Giang Nguyen put his wallet on a table; the man took it and ran out.

Anh testified defendant left after he shot Danh. Anh was starting to stand up, when another man came from the kitchen. He pointed a gun at her head and told her he would shoot her if she stood up. Defendant said, "run," and the man ran.

Defendant's fingerprints were found on a tea cup and metal tea pot in the restaurant. Anh Le found about $400 was missing from the cash register after the men left.

DISCUSSION

I. *Request To Be Housed at California Youth Authority*

Defendant requested that if the court imposed a state prison sentence, it transfer him to the California Youth Authority (CYA) for housing purposes, pursuant to Welfare and Institutions Code section 1731.5, subdivision (c). The probation officer noted such a transfer might give defendant, who was 20 years old at the time of sentencing, a better chance of completing his education and would address a "valid" concern about defendant's small stature placing him in danger in prison. The probation officer recommended the court consider housing defendant at CYA.

At a March 17, 1992, hearing, the prosecutor argued CYA would be "an unlawful commitment." The court noted it was not considering committing defendant to CYA, but only housing him there, and requested the prosecutor to ask CYA officials if they would consider taking defendant.

The prosecutor reported back at the March 20 sentencing hearing, after the court recited its intent to sentence defendant to a consecutive term of 10

years. The prosecutor stated a CYA administrator had told him CYA would perhaps accept defendant if his term were to end before his 25th birthday. The court told defense counsel: "I know if I were to sentence the defendant to nine years, that he would be eligible, I am told, to be housed at the Youth Authority. But I cannot justify it, Counsel. There's no way I can justify giving him less than the aggravated sentence. . . ."

Defense counsel urged the court to consider a mitigated term and related the remark of a CYA parole agent that, based on the facts of the case and defendant's prior record, the CYA would accept defendant; counsel qualified this by noting his conversation with the parole agent "assum[ed] the sentence did not extend beyond his twenty-fifth birthday." Defense counsel, however, also argued there was no regulation precluding a referral to CYA even if defendant were given the 10-year sentence and hypothesized defendant could be retransferred to an adult facility when he turned 25. The court did not grant the request for housing at CYA.

Under Welfare and Institutions Code section 1731.5, subdivision (c), a trial court, in sentencing any person under the age of 21, may order the defendant transferred to CYA "solely for the purposes of housing the inmate, [and] allowing participation in the programs available at the institution . . . ." The statute specifies the transfer will end when "the Director of the Youth Authority orders the inmate returned to the Department of Corrections, the inmate is ordered discharged by the Board of Prison Terms, or the inmate reaches the age of 25 years, whichever first occurs."

■ The prosecutor and trial court here appear to have believed CYA was precluded from accepting an inmate under Welfare and Institutions Code section 1731.5, subdivision (c) if the inmate's term was expected to last beyond his or her 25th birthday. We have found nothing in the statute or in case law interpreting it supporting this position. Nor has the Attorney General cited any CYA rule or regulation precluding CYA from housing defendant until he reaches the age of 25, after which he may be returned to the Department of Corrections if his term of imprisonment has not ended.

The Attorney General argues the request for CYA housing had to be denied because a CYA administrator had told the prosecutor CYA would not accept defendant. It appears, however, that the administrator's position (assuming the prosecutor correctly understood it) rests on the same unsupported assumption held by the prosecutor and the trial court. No rule, regulation or even policy statement bearing out the purported restriction was cited to the trial court. The court could not properly rely on such an unsupported representation of CYA's position.

Because the court seemingly believed CYA could not accept defendant for housing, it never directly addressed the discretionary question of whether a transfer was appropriate. As noted in the probation officer's report, there were factors supporting a transfer. We must therefore remand for the court to exercise its discretion.

II. *Other Claims of Sentencing Error**

. . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The cause is remanded to the superior court for consideration of defendant's request to be housed at the California Youth Authority. (Welf. & Inst. Code, § 1731.5, subd. (c).) The judgment is otherwise affirmed. The abstract of judgment shall be modified to show: The robberies (counts 1 and 2) were in the second degree; the gun-use enhancement (§ 12022.5) on count 4 was stricken; and an enhancement of three years for intentional infliction of great bodily injury (§ 12022.7) was imposed on count 4, as a part of the concurrent subordinate term imposed on that count.

Merrill, Acting P. J., and Chin, J., concurred.

---

*See footnote, *ante*, at page 1699.