[No. B064544. Second Dist., Div. Seven. May 5, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
JORGE LUIS HIGAREDA, Defendant and Appellant.

1402

**COUNSEL**

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Karen Bissonnette, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS (Fred), J.**—A jury convicted appellant of nine counts of robbery (Pen. Code,[1] § 211) and one count of discharging a firearm with gross negligence (§ 246.3), found true firearm allegations (§§ 12022.5, 12022, subd. (a)(1)), acquitted appellant of three counts of robbery, and could not reach a verdict on one robbery count (later dismissed). Appellant was sentenced to a 23-year, 8-month state prison term.

Appellant contends: (1) the trial court's special "force and fear" instruction constituted a directed verdict; (2) the trial court erred in ruling his confession voluntary; (3) the sentencing judge erred in refusing to order that appellant be "transferred to the custody of the Youth Authority" (Welf. & Inst. Code, § 1731.5, subd. (c)); (4) the sentence for discharging a firearm with gross negligence (§ 246.3) violated section 654; and (5) the trial court erred in its reasonable doubt instruction.

We find no prejudicial error and affirm the judgment.

### FACTUAL BACKGROUND

Because proof of guilt was overwhelming and appellant makes no insufficiency of evidence claim, we synopsize the evidence. Our perspective favors the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

During a two-week period, July 25-August 7, 1990, appellant, who is Hispanic, and several Asian confederates[2] committed a series of robberies in East Los Angeles. They selected Asian victims who resembled appellant's confederates. Identification and credit cards, along with valuables, were taken and then used by appellant's confederates.

On July 25, 1990, Benny Wang (victim, count XIII) and Hugo Lung (victim, count XIV) drove to a bowling alley in Arcadia. About 11:20 p.m.,

---

[1]Statutory references, unless otherwise noted, are to the Penal Code.

[2]Jae-Hyun Moon, Sung Choi, and Dustin Lim were charged as codefendants with appellant. Only Jae-Hyun Moon was tried with appellant and he, shortly after the jury had been selected, apparently pleaded guilty. (The record on appeal does not contain his guilty plea.)

while Mr. Lung was in the restroom, he noticed appellant who was six feet two inches, wore jeans and striped tee shirt, and had pimples on his face.

When Mr. Wang was in the restroom he also noticed appellant.

Later, when Mr. Wang and Mr. Lung were paying the cashier they saw appellant with an Asian man (Jae-Hyun Moon) who resembled Mr. Lung.

As Mr. Wang and Mr. Lung were putting their bowling balls in their car appellant pointed a pistol at them and said, "Drop the money or I will shoot you." Appellant took their money and Mr. Lung's wallet. Appellant got in a red Camaro driven by Jae-Hyun Moon and left. Two months later Mr. Lung learned $1,000 had been charged on his stolen credit card.

On August 4, 1990, about 11 p.m., Freddie Cheung (victim, count V) returned to his Monterey Park residence and was about to open his front door when appellant put a shotgun in his back and demanded his money. Mr. Cheung produced it, removed the money and gave it to appellant but held on to his wallet. Appellant again demanded the wallet and when Mr. Cheung did not relinquish it appellant tried to pull the shotgun trigger. Mr. Cheung dropped the wallet and appellant picked it up.

Mr. Cheung tried to run but an Asian man grabbed and held him. Appellant and the Asian man forced Mr. Cheung to open the door. They went inside, up to the second floor, got another occupant, Quoc Duong (victim, count VI), out of the shower and robbed him. Appellant and the Asian man then pulled out phones and left in a red sports car.

The next evening, August 5, 1990, Kathy Brook (victim, count VIII), her fiancé Gordon Wong (victim, count VII), and Ms. Brook's student, Sumi Inoye, returned to their car in Monterey Park when an Asian man pointed a shotgun at Mr. Wong's back while appellant demanded Ms. Brook open the passenger window. Appellant and the Asian man took money, Mr. Wong's wallet, and Ms. Brook's car key and threatened to harm them if they tried to attract attention. Appellant and the Asian man then left in a red Camaro.

Ms. Brook had a spare car key and gave it to Mr. Wong who, with Ms. Brook and Ms. Inoye, followed the red Camaro. After about a mile, in a dark residential area, the red Camaro stopped and appellant and the Asian man got out. Appellant fired the shotgun in the direction of the victims' car (count IX).

Appellant and the Asian man reentered the red Camaro and left.

Mr. Wong's stolen credit card was used to its $2,000 limit.

On August 7, 1990, about 1 a.m., Jonathan Chen (victim, count X), Lenny Chan (victim, count XI), Kuang Duong (victim, count XII), and three other friends were in the parking lot of a Monterey Park restaurant, where they had just eaten, when appellant approached, pointed a shotgun at them, and ordered them to drop their wallets. Momentarily, a red Camaro pulled up, two men got out and one of them, a short Asian man, picked up the wallets. When a waitress opened the restaurant's back door one of the robbers said, "Let's get out of here." Appellant fired a shot in the air and the robbers fled in the red Camaro.

An investigation of these and other robberies led the police to a residence at 18273 LaGuardia Street in Rowland Heights. On August 17, 1990, pursuant to a search warrant, police searched the residence and recovered property and identification belonging to the victims. Jae Moon and other confederates were arrested. The shotgun used in several of the robberies was recovered from a Thunderbird parked in the driveway of the residence. That Thunderbird had been purchased with a red Camaro trade-in.

Appellant, who was in custody at a juvenile detention center in Downey, was questioned on August 22, 1990. He confessed.

Appellant did not testify[3] and presented no defense.

### DISCUSSION

1. *Appellant contends the trial court's special "force and fear" instruction constituted a directed verdict.*

The trial court (Superior Court Judge Gilbert C. Alston) defined robbery and its elements by reading CALJIC No. 9.40[4] to the jury. Appellant does not fault this instruction.

---

[3]Appellant did testify at a section 402 hearing (Evid. Code, § 402).

[4]The instruction reads:

"Defendant is accused in Counts 1-8, and 10-14 of the information of having committed the crime of robbery, a violation of Section 211 of the Penal Code.

"Every person who takes personal property in the possession of another, against the will and from the person or immediate presence of that person, accomplished by means of force or

But, at prosecution request and without defense objection,[5] the trial court also gave a "special" force or fear instruction. The trial court told the jury, "You are instructed that the aiming of a handgun or shotgun at a victim accompanied by a demand and receipt of money or personal property amounts to force and inferably fear, within the meaning of Penal Code 211, defining robbery as a felonious taking by force or fear."

■ Appellant contends that by this instruction the trial court determined the "force or fear" element of robbery and removed it from jury determination.

Although appellant's contention is overstated, we agree the trial court erred.

■ As our Supreme Court stated: "In many criminal cases, the prosecution's evidence will establish an element of the charged offense 'as a matter of law.' Similarly, in many instances, the accused will not seriously dispute a particular element of the offense. . . . However, neither of these sometime realities of trial practice justifies the giving of an instruction which takes an element from the jury and decides it adversely to the accused. Such an instruction confuses the roles of judge and jury." (*People* v. *Figueroa* (1986) 41 Cal.3d 714, 733 [224 Cal.Rptr. 719, 715 P.2d 680], internal citations omitted.)

■ Recently we cautioned that "in explaining or defining a term— which is an offense element—a trial court must exercise care. The ' "law/fact" distinction' (*People* v. *Figueroa* (1986) 41 Cal.3d 714, 733 [224 Cal.Rptr. 719, 715 P.2d 680]) is elusive and easily breached." (*People* v. *Snead* (1993) 20 Cal.App.4th 1088, 1095 [24 Cal.Rptr.2d 922]; see also *People* v. *Daniels* (1993) 18 Cal.App.4th 1046, 1051-1053 [22 Cal.Rptr.2d 877].)

The subject instruction was fact intrusive and error.

But, contrary to appellant's assertion, such error is not reversible per se. If harmless beyond a reasonable doubt, reversal is not required. (*People* v. *Lee* (1987) 43 Cal.3d 666, 674 [238 Cal.Rptr. 406, 738 P.2d 752].)

---

fear and with the specific intent permanently to deprive such person of such property, is guilty of the crime of robbery in violation of Penal Code Section 211.

"In order to prove such crime, each of the following elements must be proved:

"1. A person had possession of property of some value however slight,

"2. Such property was taken from such person or from his or her immediate presence,

"3. Such property was taken against the will of such person,

"4. The taking was accomplished either by force, violence, fear or intimidation, and

"5. Such property was taken with the specific intent permanently to deprive such person of the property."

[5]Section 1259 authorizes appellate review of an unobjected to instruction.

We are satisfied the error was harmless beyond a reasonable doubt.

Only identity, not force or fear, was in issue. The defense did not dispute or question that each victim was robbed. As defense counsel stated in argument: "The defense is not in any way disputing that the charges, the 13 counts of robbery occurred. Indeed they did. The factor, as you are aware, is to determine whether or not it was Mr. Higareda who committed and participated in the 13 armed robbery counts."

Moreover, the trial court left for jury determination whether a gun was aimed at a victim and whether a demand for money was made. The jury specifically found a firearm was used in each robbery and could not have reasonably doubted that such use amounted to "force or fear."

2. *Appellant contends the trial court erred in ruling his confession voluntary.*

■ Appellant contends his confession was involuntary, not because of a *Miranda* (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) violation, but because of a promise of leniency.

Before addressing the merits, we outline the procedural setting in order to consider the Attorney General's waiver arguments.

When the trial began there were two defendants, appellant and Jae-Hyun Moon, each represented by separate counsel. After jury selection but before presentation of evidence the trial court conducted an omnibus hearing on defendant Moon's motions to exclude his statements and to suppress seized evidence and on appellant's motion to exclude his confession. The first witness was Detective Riojas. After he testified, the trial court denied defendant Moon's *Miranda* and relevance motions. Still undecided were defendant Moon's "lineup, search warrant, [and] eyewitness identification" motions. Then appellant testified, his attorney argued, and the court took a recess.

Following the recess, still out of the presence of the jury, defendant Moon's attorney stated that his client wished to speak with the trial court privately. The trial court agreed. During this chambers conversation between defendant Moon and the trial court, with only the bailiff and court reporter also present, defendant Moon said he wanted to plead guilty.

Thereafter, the trial proceeded without defendant Moon, who had apparently pleaded guilty to all charges.[6]

The prosecutor made an opening statement, the trial court excused the jury, and the following colloquy occurred:

"THE COURT: The jurors have left the room . . . . Mr. Mason [counsel for defendant Moon] withdrew the remaining motions, one of which was a motion to quash the search warrant.

"MR. NARDONI [trial counsel for appellant]: That has nothing [to] do with me and I am not part of that.

"THE COURT: Thank you. That's all I wanted to know. See you at 1:30."

Some days later, without objection, Detective Riojas testified to appellant's confession.

■ The Attorney General asserts that by failing to object at the time his confession was introduced, appellant waived appellate review. (Evid. Code, § 353; *People* v. *Jennings* (1988) 46 Cal.3d 963, 975, fn. 3 [251 Cal.Rptr. 278, 760 P.2d 475] ["Generally when an *in limine* ruling that evidence is admissible has been made, the party seeking exclusion must object at such time as the evidence is actually offered to preserve the issue for appeal. . . . The reason for this rule is that until the evidence is actually offered, and the court is aware of its relevance in context, its probative value, and its potential for prejudice, matters related to the state of the evidence at the time an objection is made, the court cannot intelligently rule on admissibility."]; *People* v. *Gutierrez* (1993) 14 Cal.App.4th 1425, 1437, fn. 7 [18 Cal.Rptr.2d 371], citations omitted; 3 Witkin, Cal. Evidence (3d ed. 1986) § 2011, pp. 1969-1971.)

In the unusual circumstances of the instant trial we find that appellant's failure to timely object was excused. First, the trial court assured defense counsel their motions were *not in limine* because the jury had been sworn. Although mistaken,[7] this assurance was understandably relied upon by defense counsel. Second, the trial court informed counsel its ruling would be binding. Third, the trial court told counsel they need not make a "continuing objection."

---

[6]Page 1 of the March 12, 1991, minute order states: "In open court, defendant states his desire to change his previously entered plea. Further proceedings as to Moon are reflected on Page 2." Page 2 is not included in the record on appeal.

[7]The distinction is nonexistent. (See Evid. Code, §§ 402-406; *People* v. *Jennings, supra,* 46 Cal.3d 963, 975, fn. 3.)

But the Attorney General further argues that appellant waived appellate review by failing to obtain a ruling on his motion. (*People* v. *Obie* (1974) 41 Cal.App.3d 744, 750 [116 Cal.Rptr. 283], overruled on other grounds by *People* v. *Rollo* (1977) 20 Cal.3d 109, 120, fn. 4 [141 Cal.Rptr. 177, 569 P.2d 771]; 3 Witkin, Cal. Evidence (3d ed. 1986) § 2030, pp. 1992-1993.) Despite the absence of a ruling[8] and the apparent merit of the Attorney General's argument, we address the merits of appellant's contention.[9]

Detective Riojas interviewed appellant on August 22, 1991, about 1 p.m., at the Los Padrinos Juvenile Detention Facility in the City of Downey. Detective Riojas was wearing a suit, not a uniform, and had checked in his weapon before the interview. The interview occurred in an office and both Detective Riojas and appellant were seated. In the presence of a female control investigator from the probation department, Detective Riojas advised appellant of his *Miranda* rights. Appellant stated he understood and gave up each of his rights and wanted to talk to the detective.[10] Appellant and the female control investigator signed the *Miranda* waiver form. Throughout the interview appellant "appeared calm," not frightened or scared.

During the interview Detective Riojas told appellant that "if he spoke the truth I would talk to the District Attorney . . . if he told me the truth . . . it would be up to the District Attorney upon [*sic*] any other further action of the case."

 Appellant asserts this was a promise of leniency by Detective Riojas which made his confession involuntary. Appellant is mistaken.

" '[M]ere advice or exhortation by the police that it would be better for the accused to tell the truth when unaccompanied by either a threat or a promise does not render a subsequent confession involuntary.' " (*People* v. *Howard* (1988) 44 Cal.3d 375, 398 [243 Cal.Rptr. 842, 749 P.2d 279]; see also *People* v. *Thompson* (1990) 50 Cal.3d 134, 166-170 [266 Cal.Rptr. 309, 785 P.2d 857]; *People* v. *Groody* (1983) 140 Cal.App.3d 355, 358-359 [189 Cal.Rptr. 467]; *In re Anthony J.* (1980) 107 Cal.App.3d 962, 971-973 [166 Cal.Rptr. 238]; *People* v. *Wischemann* (1979) 94 Cal.App.3d 162, 171-172 [156 Cal.Rptr. 386].)

[8]The reporter's transcript fails to contain a ruling. A March 12, 1991, minute order summarized the omnibus hearing and, without distinguishing between defendant Moon and appellant, merely stated "Motion is denied." In context, the reference is to defendant Moon's motion.

[9]As we earlier described, there were "unusual" and distracting trial court circumstances. Further, to avoid the merits would raise issues of effective assistance of counsel and due process.

[10]Defense counsel also stipulated *Miranda* was complied with.

3. *Appellant contends the sentencing judge erred in refusing to order that appellant be "transferred to the custody of the Youth Authority" (Welf. & Inst. Code, § 1731.5, subd. (c)).*

Because appellant "was under the age of 18 years when he committed [the] criminal offense[s]" (Welf. & Inst. Code, § 707.2),[11] the sentencing judge (Superior Court Judge Janice C. Croft) obtained a Youth Authority evaluation and report before imposing sentence. The finding of the Youth Authority was the following: "Jorge Luis Higareda is not amenable to the treatment and training offered by the Youth Authority. However, he is acceptable for placement at the Youth Authority under Section 1731.5(c)[12] of the Welfare and Institutions Code."

The sentencing judge followed the Youth Authority's "not amenable" recommendation and sentenced appellant to state prison rather than committing him to the Youth Authority. Appellant does *not* claim error.

But contrary to the Youth Authority's recommendation that appellant was acceptable "for placement at the Youth Authority, i.e. solely for the purposes of housing" (Welf. & Inst. Code, § 1731.5, subd. (c)), the sentencing judge denied appellant Youth Authority housing.

---

[11]The section reads: "Prior to sentence, the court of criminal jurisdiction may remand the minor to the custody of the Youth Authority for not to exceed 90 days for the purpose of evaluation and report concerning his amenability to training and treatment offered by the Youth Authority. No minor who was under the age of 18 years when he committed any criminal offense and who has been found not a fit and proper subject to be dealt with under the juvenile court law shall be sentenced to the state prison unless he has first been remanded to the custody of the Youth Authority for evaluation and report pursuant to this section.

"The need to protect society, the nature and seriousness of the offense, the interests of justice, the suitability of the minor to the training and treatment offered by the Youth Authority, and the needs of the minor shall be the primary considerations in the court's determination of the appropriate disposition for the minor."

[12]In pertinent part the section reads: "(c) Any person under the age of 21 years who is not committed to the authority pursuant to the section may be transferred to the authority by the Director of Corrections with the approval of the Director of the Youth Authority. In sentencing a person under the age of 21 years, the court may order that the person shall be transferred to the custody of the Youth Authority pursuant to this subdivision. When the court makes such an order and the Youth Authority fails to accept custody of the person, the person shall be returned to the court for resentencing. The transfer shall be solely for the purposes of housing the inmate, allowing participation in the programs available at the institution by the inmate, and allowing Youth Authority parole supervision of the inmate, who, in all other aspects shall be deemed to be committed to the Department of Corrections and shall remain subject to the jurisdiction of the Director of Corrections and the Board of Prison Terms.
" . . . . . . . . . . . . . . . . . . . . . . . .

"The duration of the transfer shall extend until the Director of the Youth Authority orders the inmate returned to the Department of Corrections, the inmate is ordered discharged by the Board of Prison Terms, or the inmate reaches the age of 25 years, whichever first occurs."

Appellant contends this denial was an abuse of discretion. Appellant principally relies upon *People* v. *Javier A.* (1985) 38 Cal.3d 811 [215 Cal.Rptr. 242, 700 P.2d 1244] and *People* v. *Fields* (1984) 159 Cal.App.3d 555 [205 Cal.Rptr. 888]. Both cases are inapposite because they construe Welfare and Institutions Code section 707.2 in its pre-1982 form. The "clear intent [of the 1982 amendment] was to broaden the court's discretion to impose a prison sentence despite a positive YA recommendation." (*People* v. *Jones* (1988) 46 Cal.3d 585, 601 [250 Cal.Rptr. 635, 758 P.2d 1165].)

"Before the 1982 amendment section 707.2 read in relevant part as follows: 'No minor who was under the age of 18 years when he committed any criminal offense . . . shall be sentenced to the state prison unless he has first been remanded to the custody of the California Youth Authority for evaluation and report pursuant to this section and the court finds after having read and considered the report submitted by the Youth Authority that the minor is not a suitable subject for commitment to the Youth Authority.' (Stats. 1976, ch. 1069, § 1, p. 4808.)" (46 Cal.3d at p. 601.)

In this, its pre-1982 form, the focus of the statute was on the *minor* and whether or not he/she was "a suitable subject for commitment to the Youth Authority." The 1982 amendment changed that focus. (See fn. 11, *ante*.) As the Senate Committee on the Judiciary noted, " '[t]he purpose of this bill is to permit minors who are tried in adult court to be sent to state prison regardless of the Youth Authority evaluation.' " (*People* v. *Jones, supra*, 46 Cal.3d 585, 601-602.)

The Legislature made clear what considerations a judge should weigh in exercising Welfare and Institutions Code section 707.2 discretion: "The need to protect society, the nature and seriousness of the offense, the interests of justice, the suitability of the minor to the training and treatment offered by the Youth Authority, and the needs of the minor shall be the primary considerations in the court's determination of the appropriate disposition for the minor."

By contrast, Welfare and Institutions Code section 1731.5 (see fn. 12, *ante*) does not specify what considerations a judge should weigh in exercising "housing" discretion. Nor, so far as we are aware, does any reported decision.

Although the two decisions, commitment (Welf. & Inst. Code, § 707.2) and "housing" (Welf. & Inst. Code, § 1731.5, subd. (c)), are different, they are related and similar. We conclude that the five primary considerations specified in section 707.2 are proper considerations for the exercise of

section 1731.5, subdivision (c) "housing" discretion. We further hold that although a court must give appropriate weight to a Youth Authority "housing" recommendation, that recommendation is not binding on the court. (See generally *People* v. *Prothro* (1989) 215 Cal.App.3d 166 [263 Cal.Rptr. 433]; *People* v. *Martinez* (1987) 191 Cal.App.3d 1372 [237 Cal.Rptr. 219]; *People* v. *Nguyen* (1993) 15 Cal.App.4th 1699 [19 Cal.Rptr.2d 761]; *People* v. *Armendariz* (1993) 16 Cal.App.4th 906 [20 Cal.Rptr.2d 311].)

 In exercising its "housing" discretion the sentencing court read and considered the Youth Authority evaluation report. That report stated, in part: "Jorge Luis Higareda has an extensive arrest history which began at the age of 15. Since that time, his law enforcement contacts have escalated in frequency and seriousness with an ongoing potential for danger. His prior arrests consist of auto thefts, receiving stolen property, petty theft, reckless driving, evading a police officer, driving without a license, being under the influence of a controlled substance, resisting arrest, escape from jail/detention and failure to appear. He has had the opportunity of being home on probation as well as community camp placement. In fact, the defendant was involved in a drive-by shooting of an inhabited dwelling. Apparently, the defendant fired three shots and then fled in the vehicle. In addition, the defendant is charged with robberies and attempted robberies, where he robbed the victims at gunpoint and terrorized them during the commission of the offenses. Due to defendant's early onset of delinquent behavior as well as his propensity for violence, he is deemed to be intractable."

Among the sentencing court's comments are the following: "I think that these crimes were terrible. I don't find him to be a juvenile that had a bad day and went out and decided he was going to flex his muscle as a man or something. I agree with Ms. Oliver [Youth Authority casework specialist] who says that he appears to be deeply entrenched in his criminal lifestyle, shows no signs of a change or desire to change.

"This was not the act[] of some immature—I shouldn't say probably is immature, but someone as I said just didn't know what was happening, and it was peer pressure. This was premeditated over a period of a week and a half of robberies, intimidation, of threats to kill, just a rampage. That's what it is, a rampage.

"And under 707.2 of the Welfare and Institutions Code I am to determine whether or not he is amenable to be in the California Youth Authority. And I have to look at things like to protect society. He is not going to the California Youth Authority, because I don't think we can protect society by placing him there.

"The nature and the seriousness of the offenses I think they are actually terrible. These are violent felonies against unarmed human beings. Just vicious, cruel acts. Certainly in the interests of the nature and seriousness of the offenses he is not amenable. In the interests of justice this young man should be punished, and for these vicious acts he is not going to be punished by going to the California Youth Authority."

We find no abuse of discretion in the sentencing court's denial of Youth Authority "housing."

4. *Appellant contends the sentence for discharging a firearm with gross negligence (§ 246.3) violated section 654.*

■ As we earlier described, appellant committed the subject offense on August 5, 1990, when, after robbing Kathy Brook and Gordon Wong, he fired a shotgun in the direction of their pursuing car.

Appellant contends firing the shotgun was part of a course of conduct indivisible from the robbery of Ms. Brook and Mr. Wong and, as such, cannot be separately punished. (§ 654.) Appellant is mistaken.

Multiple punishment for violent offenses involving different victims is not barred by section 654. (*People* v. *Anderson* (1990) 221 Cal.App.3d 331, 338 [270 Cal.Rptr. 516].)

Sumi Inoye was a passenger in the Brook-Wong car. She was not a robbery victim and appellant may be separately punished for endangering her by his violent crime. (*People* v. *Masters* (1987) 195 Cal.App.3d 1124, 1128 [241 Cal.Rptr. 511]; *People* v. *Anderson, supra,* 221 Cal.App.3d 331, 338-339; *People* v. *Gutierrez* (1992) 10 Cal.App.4th 1729, 1736-1737 [13 Cal.Rptr.2d 464]; *People* v. *Phan* (1993) 14 Cal.App.4th 1453, 1466 [18 Cal.Rptr.2d 364].)

5. *Appellant contends the trial court erred in its reasonable doubt instruction.*

■ During voir dire, the trial court made this comment to the jury: ". . . I am going to give you the reasonable doubt instruction which may or may not be comprehensible depending on how you look at it. I have been doing it for 20 years now as a judge and many years before that as a lawyer, and I am still not sure what it means." Appellant contends this comment rendered the standard reasonable doubt instruction unconstitutionally vague. The contention is meritless.

First, appellant failed to object to the comment and thus waived any error. (Evid. Code, § 353; *People* v. *Anderson* (1990) 52 Cal.3d 453, 468 [276 Cal.Rptr. 356, 801 P.2d 1107].)

Second, the court, in instructing on reasonable doubt (CALJIC No. 2.90) did so correctly (*Victor* v. *Nebraska* (1994) __ U.S. __ [127 L.Ed.2d 583, 114 S.Ct. 1239]).

Third, the record fails to reflect any jury difficulty in understanding or applying the reasonable doubt instruction.

The Attorney General notes that appellant was erroneously awarded 231 "good conduct" days (instead of 230) for his 462 actual custody days, and that his total custody credits should be 692 not 693 days. We shall modify the judgment accordingly. (*People* v. *Aragon* (1992) 11 Cal.App.4th 749, 765, fn. 7 [14 Cal.Rptr.2d 561]; *People* v. *Bravo* (1990) 219 Cal.App.3d 729, 735 [268 Cal.Rptr. 486].)

### DISPOSITION

The abstract of judgment is modified as follows: for "Local Conduct Credits," *230* shall be entered; for "Credit For Time Spent in Custody, Total Days," *692* shall be entered.

As modified, the judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied May 19, 1994, and appellant's petition for review by the Supreme Court was denied July 28, 1994.