Filed 7/29/14  P. v. Jones CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C061487 |
| v. | (Super. Ct. No. 95F05910) |
| TRACY MAXXIZZINE JONES, | |
| Defendant and Appellant. | |

This appeal has a long and convoluted history.  In the background section of this opinion, we trace the procedural history from the January 1996 entry of a guilty plea by defendant Tracy Maxxizzine Jones to her present appeal.  For now, it suffices to note defendant entered into a negotiated plea agreement in which several charged felonies were dismissed with a *Harvey* waiver[1] in exchange for her admission of one count of assault with force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1))[2] and two prior serious felony convictions (strikes) for assault with a deadly weapon (§ 667, subds. (b)-(i)).

---

[1]    *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*).

[2]    Undesignated statutory references are to the Penal Code.

1

Defendant's opening brief contends (1) she should be allowed to withdraw her plea because the plea hearing judge assured her she would be able to change her plea if the sentencing judge did not "abide by the plea bargain," (2) she should also be allowed to withdraw the plea because the prosecutor misrepresented the sentencing consequences of the charged counts at the plea hearing, (3) there was no factual basis for her guilty plea, (4) the trial court erred in considering the dismissed charges when sentencing her, (5) she received ineffective assistance of counsel because her trial attorney ineptly argued for sentencing the admitted assault as a misdemeanor, (6) the trial court denied defendant's right to due process when failing to disclose the contents of an "ex parte" memorandum, and (7) the trial court erred in sentencing defendant for two prior strikes even though both convictions arose out of the same incident.

Defendant subsequently filed a supplemental opening brief in which she argued her trial attorney was ineffective when misadvising her to accept the plea agreement on assurances the trial court would reduce her charge to a misdemeanor or allow her to withdraw the plea. Defendant also filed a second supplemental opening brief in which she argued she is entitled to immediate resentencing under Proposition 36, an initiative known as the Three Strikes Reform Act of 2012 (§§ 667, 1170.12, 1170.126; Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012) (Proposition 36)).

While this appeal was pending, defendant also filed in this court a petition for writ of habeas corpus in which she claimed she received ineffective assistance of counsel in several respects because her trial attorneys failed to properly advise or represent her during the plea and sentencing hearings. Determining the allegations in the petition stated a prima facie case for relief, we stayed this appeal and issued an order to show cause we made returnable to the superior court. After the superior court appointed new trial counsel for defendant, she informed the trial court she "no longer wishe[d] to pursue the instant habeas corpus petition."

2

Shortly after the dismissal of her habeas corpus petition, defendant informed us she wished to withdraw the first three claims in her opening brief as well as the argument in her first supplemental opening brief. We accept the withdrawal of these issues by defendant.

As to the remaining issues, we conclude the trial court did not err in considering dismissed charges when deciding whether to sentence defendant for a felony or misdemeanor. Defendant did not receive ineffective assistance of counsel at the sentencing hearing. Her attorney at that hearing tendered valid arguments in the face of difficult facts for defendant. The trial court did not violate defendant's rights in considering a research memorandum prepared by the court's staff attorney. The trial court did not err in refusing to dismiss one of her prior strikes when sentencing defendant. Finally, we conclude passage of Proposition 36, which amended the three strikes law, does not entitle her to resentencing in this appeal. Her remedy under Proposition 36 is to file a petition to recall the sentence.

Accordingly, we affirm the judgment.

BACKGROUND

*Facts*

We draw the facts of defendant's underlying offense from the probation officer's report prepared in connection with defendant's March 12, 1996, sentencing hearing.

Around May 12, 1995, defendant and her accomplice, Renee Vasquez, went to Laura Aguayo's home to offer Aguayo $100 to participate in check-cashing fraud. Aguayo declined to participate. About four days later, Aguayo received another visit from defendant and Vasquez. This time, defendant and Vasquez brought along several men. Defendant and her accomplices entered Aguayo's home. Defendant pointed a sawed-off shotgun at Aguayo and her husband, Nels Kephart, while defendant's accomplices removed property from the house. Defendant and her accomplices left with

3

Aguayo's car.  Before leaving, defendant threatened to kill Aguayo and Kephart if they reported the crime.

### Guilty Plea and Sentencing

Defendant was charged by amended information with two counts of robbery (§ 211), burglary (§ 459), carjacking (§ 215, subd. (a)), vehicle theft (Vehicle Code, § 10851, subd. (a)), and receiving stolen property (§ 496, subd. (a)).  The information further alleged defendant had two prior strikes.  (§ 667, subds. (b)-(i).)

On January 8, 1996, defendant pled guilty to assault with force likely to produce great bodily injury as a reasonably related offense to the first charged robbery. Defendant admitted the two prior strike convictions.  The remaining charges were dismissed with a *Harvey* waiver.  A month later, Judge James L. Long, who presided over the plea hearing, recused himself after learning he knew some of defendant's family members.  Defendant waived her right to be sentenced by Judge Long.

On March 12, 1996, defendant appeared for sentencing before Judge Gary E. Ransom.  The trial court rejected defendant's argument in favor of characterizing the admitted assault as a misdemeanor and sentenced her to serve 25 years to life in state prison.

### First Habeas Corpus Petition in Sacramento County Superior Court

In June 1996, the California Supreme Court issued its decision in *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), to hold trial courts have discretion to dismiss prior strikes under section 1385.  In response, defendant filed a petition for writ of habeas corpus in Sacramento Superior Court case No. 98F01339 on February 13, 1998.  We take judicial notice of the March 12, 1998, order entered in Sacramento Superior Court case No. 98F01339.  (Evid. Code, §§ 452, subd. (d)(1), 459.) In that order, Judge Ransom denied the petition because defendant had "not set forth any circumstances which support striking one or more of her prior convictions."  Judge Ransom also rejected defendant's contention she had received ineffective assistance of

4

counsel because her trial attorney failed to argue her two prior strikes could not serve as separate enhancements. As Judge Ransom explained, "The record establishes that the prior assault convictions involved two victims. 'Multiple punishment for violent offenses involving different victims is not barred by section 654.' (*People v. Higareda* (1994) 24 Cal.App.4th 1399, 1413.)"

### *Second Habeas Corpus Petition in Sacramento County Superior Court*

Defendant filed a second petition for habeas corpus in the superior court. We take judicial notice of the June 10, 1999, order entered in Sacramento Superior Court case number 98F011056. (Evid. Code, §§ 452, subd. (d)(1), 459.) In that order, Judge Peter Mering denied the second petition as "essentially, a duplication of the petition filed in this court on February 13, 1998." After examining the transcripts from the plea and sentencing hearings, Judge Mering found no merit to claims the sentencing judge misunderstood his discretion to strike the priors or the two prior strikes could not both serve as sentence enhancements.

### *Third and Fourth Habeas Corpus Petitions in Sacramento Superior Court*

Defendant filed a third and fourth petition for habeas corpus in Sacramento Superior Court case Nos. 99F06018 and 01F00600. Both petitions were denied as successive and untimely. We take judicial notice of both orders denying these petitions. (Evid. Code, §§ 452, subd. (d)(1), 459.)

### *Habeas Corpus Petition in this Court*

In April 2001, defendant filed a petition for writ of habeas corpus in this court in case No. C038074. On July 12, 2001, this court accepted the People's stipulation the record showed the sentencing court was unaware of its discretion to dismiss prior strikes in the interests of justice. Accordingly, we remanded the case "to the trial court for the limited purpose of allowing the trial court to exercise its discretion whether to strike one or more" of defendant's strikes.

5

On March 14, 2002, the trial court held a new sentencing hearing to allow Judge Ransom to exercise his discretion pursuant to this court's order. After considering the arguments of the parties, Judge Ransom denied the motion and explained: "It's a tough call but I feel in considering the facts of the case and her prior record and the *Harvey* waiver matters I'm not going to grant the motion."

### *Habeas Corpus Petition in the California Supreme Court*

Thereafter, defendant filed a petition for writ of habeas corpus in the California Supreme Court. We take judicial notice of the order entered on June 9, 2004, in California Supreme Court case No. S114292. In that order, the Supreme Court summarily denied the petition.

### *Federal Habeas Corpus Petition*

In January 2006, defendant filed an amended petition for writ of habeas corpus in the United States District Court for the Eastern District of California. In September 2008, United Sates Magistrate Judge Gregory G. Hollows held an evidentiary hearing. On November 24, 2008, Magistrate Judge Hollows issued an order and findings and recommendations that found defendant received ineffective assistance of counsel in that her attorney failed to timely request a certificate of probable cause to allow her a direct appeal after being sentenced on her negotiated plea.

In January 2009, the United States District Court adopted the findings and recommendations of the magistrate. As a result, the district court ordered defendant was "permitted to initiate the appeal process in state court by seeking a certificate of probable cause." In all other respects, the federal habeas corpus petition was denied.

The People filed an appeal with the Ninth Circuit Court of Appeals in case No. 09-15550. Defendant filed a cross-appeal. On December 7, 2011, the Ninth Circuit denied the People's appeal. As to defendant's cross-appeal, the Ninth Circuit remanded the case to the district court with instructions to stay further proceedings in federal court while defendant pursued her state court appellate rights.

### *The Present Appeal*

In March 2009, Judge Ransom granted defendant's request for a certificate of probable cause. This appeal followed.

## DISCUSSION

### I

### *The Sentencing Court's Consideration of Dismissed Charges*

Defendant contends the sentencing court erred in considering the dismissed charges when deciding whether to sentence her to a felony or a misdemeanor. Defendant acknowledges a *Harvey* waiver was part of the negotiated plea agreement. However, she contends the *Harvey* waiver allowed consideration of the dismissed charges only for purposes of determining restitution and enhancing her sentence. Asserting "sentence enhancement" was unrelated to deciding between a felony and a misdemeanor, she urges us to conclude the trial court violated the terms of the plea agreement. We reject the argument.

### A.

### *Plea Colloquy*

As part of the plea hearing, the trial court clarified the terms of the deal by inquiring of the prosecutor as follows:

"THE COURT: Is it your understanding Count One[3] would be a wobbler offense?

"[Prosecutor]: That's correct, your Honor.

"THE COURT: Which would mean that it can be disposed of either as a felony or a misdemeanor?

"[Prosecutor]: That's correct.

"THE COURT: All right. Thank you. What [are] the other understandings?

---

**3** Defendant pled guilty to Count One as assault with force likely to produce great bodily injury. (§ 245, subd. (a)(1).)

7

"[Prosecutor]: That the rest of the counts will be dismissed with a *Harvey* waiver. That is, that the Court can consider the remaining counts with the exception of Five and Six at judgment and sentencing. Five and Six will be dismissed in the interest of justice in lieu of the plea given that Counts Five and Six occurred at a different time than the case –- count that she is pleading to.

"THE COURT: In terms of Count Two, Three, Four and Five and Six, if, in fact, if there are enhancements alleged within those counts, is it understood that they are going to be dismissed, too, in light of the plea to Count One?

"[Prosecutor]: That's dismissed with a *Harvey* waiver, your Honor.

"THE COURT: The enhancements?

"[Prosecutor]: That's correct.

"THE COURT: As to the priors, what's the understanding?

"[Prosecutor]: People are asking for an admission to Count Two –- excuse me, to prior conviction number two and prior conviction number four and given that she is pleading to a –- to the present offense which is not a serious felony, the five year prior allegation will be stricken by operation of law.

"THE COURT: Then the legal consequence would be then if she pleads to the two serious felonies, if Count One remains a serious felony, it would have the legal effect of a twenty-five year to life in State's Prison sentence?

"[Prosecutor]: That's correct, you Honor."

After the prosecutor articulated these terms of the plea in open court, the trial court inquired of defendant to ensure she personally understood the consequences of the plea agreement. The trial court asked:

"THE COURT: Now, ma'am, the further understanding is that all the counts, the substantive charges and the enhancements other than Counts Five and Six will be dismissed with a *Harvey* waiver which means although those enhancements and counts are dismissed, the Court may consider it for purposes of restitution *and for purposes of*

8

*enhancing your sentence on the count that you are going to plead guilty to.* Do you understand?

"THE DEFENDANT: Yes." (Italics added.)

The trial court further inquired of defendant to ensure she understood the consequences of the *Harvey* waiver by noting the court would sentence her in light of the circumstances giving rise to the charge in Count One as well as her prior criminal record:

"THE COURT: Now, ma'am, I want to make it so you understand, you and your lawyer understand that I am not promising you that I'm going to reduce this down to a misdemeanor. I'm not making you that promise. I will evaluate Count One in terms of whether it should be a misdemeanor in light of what's represented in terms of what occurred in Count One as well as your prior record including felony and/or other misconduct in terms of making my decision. [¶] Do you understand that, ma'am?

"THE DEFENDANT: Yes.

"THE COURT: You have no guarantee that I'm going to reduce it to a misdemeanor. Do you understand?

"THE DEFENDANT: Yes."

At the sentencing hearing, both sides addressed the circumstances surrounding the assault of Aguayo. The trial court noted it was "aware of its discretion to reduce [the admitted assault] to a misdemeanor." The court concluded: "I listened very carefully to everything that was said by both sides, and, having done so, it is my ruling that the motion to reduce [the admitted assault] to a misdemeanor is denied."

**B.**

***Extent of Defendant's Harvey Waiver***

As this court has previously explained, *Harvey* waivers arose out of a case in which "the Supreme Court held that, in imposing sentence under a plea bargain, the court may not consider evidence of any crime as to which charges were dismissed as a

9

'circumstance in aggravation' supporting the upper term on the remaining counts. (*Harvey, supra*, at p. 758.)  The court deemed it 'improper and unfair' to permit the sentencing court to consider any of the facts underlying dismissed counts because, absent an agreement to the contrary, a plea bargain implicitly includes the understanding that the defendant will suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, dismissed counts.  (*Ibid*.)  [¶]  To avoid the *Harvey* restriction, prosecutors often 'condition [] their plea bargains upon the defendant agreeing that the sentencing court may consider the facts underlying the not-proved or dismissed counts when sentencing on the remainder.'  (*People v. Myers* (1984) 157 Cal.App.3d 1162, 1167.)  Defendants may accept this relatively minor potential consequence in order to avoid other convictions or sentencing enhancement terms.  (*Ibid*.)  This agreement is known as a '*Harvey* waiver.'  (*Ibid*.)  A *Harvey* waiver permits the sentencing court to consider the facts underlying dismissed counts and enhancements when determining the appropriate disposition for the offense or offenses of which the defendant stands convicted.  (*People v. Moser* (1996) 50 Cal.App.4th 130, 132–133.)"  (*People v. Munoz* (2007) 155 Cal.App.4th 160, 166-167.)

Here, defendant's *Harvey* waiver was limited because the plea agreement disallowed consideration of Counts Five and Six, the dismissed charges of vehicle theft and receiving stolen property.  As the prosecutor explained, Counts Five and Six related to offenses committed on an occasion separate from defendant's admitted assault with force likely to produce great bodily injury.  Nonetheless, the dismissed charges of robbery, burglary, and carjacking *could* be considered by the trial court under the terms of defendant's *Harvey* waiver.

Defendant contends the *Harvey* waiver was further limited when the trial court stated the dismissed charges could be considered only "for restitution" and "for enhancing your sentence."  Thus, defendant argues the dismissed counts could not be used in deciding whether to sentence her for a felony or a misdemeanor.  We disagree.

10

Defendant pled guilty before the California Supreme Court declared trial courts retain jurisdiction to dismiss a prior strike in the interests of justice. (*Romero*, *supra*, 13 Cal.4th 497.) Indeed, this court granted defendant habeas corpus relief in July 2001, based on a stipulation by the People that the sentencing court had not been aware of its discretion to strike prior convictions under section 1385. Consequently, the *only* purpose for considering the dismissed counts under a *Harvey* waiver "for enhancing [defendant's] sentence" was to decide whether the admitted assault should be a felony or a misdemeanor. During the plea colloquy the trial court explained to defendant that if sentenced to a misdemeanor she would serve a full year without any credit for time served. However, if defendant were sentenced for a felony, she would be sentenced to serve a term of 25 years to life. On the record, defendant stated she understood.

The *Harvey* waiver would have been meaningless as to sentence enhancement if the dismissed charges could not be considered on the only decision the trial court believed it had to make regarding selection of sentence, namely whether defendant committed a felony or a misdemeanor. Accordingly, we conclude the trial court did not err in considering the dismissed charges in Counts Two through Four at sentencing.

## II

### *Ineffective Assistance of Counsel Regarding Request to Reduce the Felony to a Misdemeanor*

Defendant claims her trial attorney's argument for sentencing her assault as a misdemeanor was so "incoherent" it was constitutionally deficient. This contention is substantively identical to the argument presented in her first supplemental opening brief – - an argument she has abandoned. Even though the abandonment of the claim in the first supplemental opening brief arguably waives the claim presented in her original opening brief, we consider the claim on the merits in light of the extensive history of the litigation. On the merits, we reject the claim.

11

## A.

### *Constitutional Right to Effective Assistance of Counsel*

A criminal defendant has the right to the assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215 (*Ledesma*).) This right "entitles the defendant not to some bare assistance but rather to effective assistance. [Citations.] Specifically, it entitles him [or her] to 'the reasonably competent assistance of an attorney acting as his [or her] diligent conscientious advocate.' [Citations.]" (*Ibid.*, quoting *United States v. DeCoster* (D.C. Cir. 1973) 487 F.2d 1197, 1202.) " 'In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because his [or her] "representation fell below an objective standard of reasonableness . . . under prevailing professional norms." [Citations.] Second, he [or she] must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " (*In re Harris* (1993) 5 Cal.4th 813, 832–833; accord, *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].)

Defendant bears the burden of proving a claim of ineffective assistance of counsel. (*People v. Camden* (1976) 16 Cal.3d 808, 816.) In determining whether counsel's performance was deficient, we must exercise "deferential scrutiny" (*Ledesma*, *supra*, 43 Cal.3d at p. 216) and refrain from engaging in "the perilous process of second-guessing" counsel's rational tactical decisions. (*People v. Miller* (1972) 7 Cal.3d 562, 573.) Where, as here, the record does not contain an explanation for the challenged aspect of representation, the judgment must be affirmed on appeal unless counsel was asked for an explanation and failed to provide one or there simply could be no satisfactory explanation. (*People v. Pope* (1979) 23 Cal.3d 412, 425, overruled on another ground in

12

*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1372.)  Thus, we reverse " 'only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his [or her] act or omission.'  [Citation.]"  (*People v. Zapien* (1993) 4 Cal.4th 929, 980.)

**B.**

*Analysis*

In examining the performance of defendant's trial attorney, we note the high hurdle he faced in arguing for treating the assault as a misdemeanor.  At the plea hearing, the factual basis for the plea was set forth as follows:

"THE COURT:  Would you describe the nature of the assault, please?

"[Prosecutor]:  Certainly.  Laura Aguay[o] and the defendant knew each other for many years, your Honor, and the victim Laura Aguay[o] did not report the offense to the authorities until a month later.  What happened is the defendant –- and this is the People's view of the evidence, the defendant along with a co-defendant by the name of Rene[e] Vasquez who had already pled guilty to the offense and numerous other people forcibly entered an inhabited dwelling house of Laura Aguay[o] and Nels Kephart.  [¶] Defendants held two victims, Laura Aguay[o] and Nels Kephart who they had known for many years, hostage for a time by means of force and fear.  The defendant Jones personally, according to Nels Kephart and Laura Aguay[o], personally used a sawed-off shotgun pointing it toward Nels Kephart.  [¶]  The defendants removed property from the residence and fled."

Upon questioning by the court, defendant agreed to this version of the events except she noted Aguayo "invited" her into the house.

The probation officer's report added the following details to the incident: Defendant and Vasquez took along several men when they went to Aguayo's house at 10:00 p.m.  Brandishing a sawed-off shotgun, defendant demanded $2,500 from Aguayo for the amount of money they claimed to have deposited into the checking account of Aguayo's housemate.  The amount was deposited into the housemate's checking account

13

as part of a scheme that involved deposits with fraudulent checks. Defendant and her accomplices searched Aguayo's home. When Aguayo's husband, Nels Kephart, emerged from the back of the house, defendant pointed the shotgun at him and told him to stand in the corner. While the accomplices carried property out of the house, defendant demanded Aguayo write a bill of sale for her car –- which was ultimately taken by defendant. Defendant instructed Kephart "to take a seat on the sofa, with the victim's children, while continuing to point the shotgun at him." After the bill of sale was completed and the property taken out of the house, defendant threatened Aguayo, "indicating if the crime were reported, the defendant would kill the victims."

The probation report recounted that "the defendant reportedly stated that she had previously been to prison and was not frightened to return. The victim indicated she was threatened if she reported the crime and feels fortunate that defendant did not shoot anybody. The victim described the defendant as a 'hateful' person. The victim reported she has known the defendant for 12 to 13 years as they both form[er]ly dated the same individual."

Against this backdrop, defendant claims her trial attorney's rambling and incoherent presentation at the sentencing hearing did not even address whether the assault should be considered a misdemeanor. She also claims there might have been additional evidence her trial attorney could have presented if the case had gone to trial.

We quickly dispose of the second assertion because it relies on claims that cannot be established with the appellate record in this appeal. Indeed, defendant raised exactly the same contention –- she would have been acquitted at trial –- in her petition for writ of habeas corpus filed in this court. In this appeal, defendant's speculation about exonerating evidence cannot be established on this appellate record. The appellate record sheds no light on whether defense counsel might have had a reason –- such as witness unreliability or recantation –- for not introducing the purportedly extant exonerating

evidence. Consequently, this appeal affords no relief on the claim. (*People v. Diaz* (1992) 3 Cal.4th 495, 558.)

As to the claim of incoherent and ineffective presentation, we are also not persuaded. Defense counsel demonstrated he knew he was arguing for sentencing a misdemeanor when concluding: "Your Honor, I would submit it and hope the Court will take a good look at this conduct and see what a good look at this conduct speaks to. It do[es]n't speak to 25 years to life. If you are going to send her away 25 years to life, gee, let's not have this kind of factual sequence with no injuries, a clear cut motive on the part of the victims to fabricate and lie, which they did." This summed up a reasonable strategy in light of difficult facts for the defense by (1) pointing out no one was physically injured by the assault, and (2) characterizing the victims as motivated to exaggerate the facts of the incident.

Defense counsel laid out the following argument "before we call this . . . crime that she pled to a felony": Aguayo was the one who was the thief because she took the money from her housemate that came from defendant. Thus, defendant was only trying to get her money back. It took Aguayo three weeks to report the theft and carjacking. The car itself was not even stolen because Kephart later told defense counsel he had sold it to a third party for a $100 profit. And, Aguayo was a drug dealer who gave her own daughter illegal drugs. Aguayo's housemate had stated Aguayo and Kephart wanted defendant's money for themselves and they were willing use violence for it.

This argument by defense counsel did not fall below an objective standard of reasonableness. Instead, it represented a direct attack on the seriousness of the situation by attempting to undermine the victims' credibility and by pointing out the assault did not result in physical injury. Defendant's trial attorney did not render constitutionally deficient representation.

15

## III

### *The Trial Court's Consideration of a Staff Research Memorandum*

As we have noted in the background section of this opinion, the trial court considered whether to dismiss one or both of defendant's prior strikes after this court granted defendant's petition for a writ of habeas corpus in July 2001. Thus, the trial court held a sentencing hearing on March 14, 2002, to consider defendant's *Romero* motion. Before that hearing, the trial court received a confidential memorandum prepared by a court research attorney. The memorandum bore the stamp, "Legal Research DO NOT FILE" and discussed whether the motion should be granted or denied. The court research attorney's memorandum concludes: "My recommendation would be that Your Honor not strike even one of the 'strikes.' "

Defendant contends the trial court violated her due process rights by considering this "ex parte" communication without notice to her, thereby depriving her of the opportunity to respond to its analysis and conclusion.[4] We reject the argument.

A research memorandum prepared by a court staff attorney for consideration by a trial judge does not constitute an ex parte communication. It is well settled courts may conduct their own legal research and independently assess the records of its proceedings. (*Giraldo v. Department of Corrections & Rehabilitation* (2008) 168 Cal.App.4th 231, 251.) Indeed, such independent research has been described as indispensable. (*Ibid.*) To

---

[4] We note defendant does not contend the contents of the memorandum are so erroneous as to require reversal. Such a contention would fail. A court research attorney's memorandum cannot be used to undermine the legitimacy of a trial judge's later decision after considering the moving papers and hearing arguments of counsel. Indeed, even a tentative decision by the trial court cannot be used to impeach a judgment because "a tentative statement of decision is not binding on the trial court and can be modified or changed as the judge sees fit before entry of judgment." (*FLIR Systems, Inc. v. Parrish* (2009) 174 Cal.App.4th 1270, 1284.) Even more so than a trial court's tentative decision, a trial judge is free to disregard or even ignore a research memorandum prepared by court staff.

this end, courts have central staffs of attorneys to aid in assessing the merits of legal contentions and to check the accuracy of parties' citations to the court record.  (*Ibid.*)

A court's decision "should represent the end-product of an internal evaluation by the court *and its staff* sufficient to ensure that the disposition reflects the correct legal result.  Ordinarily, the process will include substantiation of the material facts cited by the parties and confirmation of the controlling law, whether or not cited by the parties, and a thorough analysis of the arguments of the parties based upon the material facts and the applicable law."  (*People v. Garcia* (2002) 97 Cal.App.4th 847, 854, italics added.)  Such *internal* evaluation by the court and its staff is not ex parte communication.  The California Code of Judicial Ethics expressly provides that "[a] judge may consult with court personnel or others authorized by law, so long as the communication relates to that person's duty to aid the judge in carrying out the judge's adjudicative responsibilities." (Cal. Code Jud. Ethics, cannon 3(B)(7)(a).)

Here, the challenged communication was not an ex parte communication with anyone outside the court.  Thus, we find inapposite defendant's cited authority involving communications between judges and attorneys for parties and other persons not employed on the court's own staff.  (See, e.g., *In re Calhoun* (1976) 17 Cal.3d 75, 83 [trial court erred in receiving ex parte communication from the prosecutor]; *People v. Webster* (1983) 143 Cal.App.3d 679, 685 [trial court erred by initiating telephone call with Youth Authority officials to ascertain what the proper sentence should be].)  The research memorandum mistakenly included in the trial court's file did not constitute an ex parte communication, nor did it undermine defendant's due process rights.

## IV

### *The Trial Court's Refusal to Dismiss One of the Prior Strikes*

Defendant contends the trial court erred in denying her motion to dismiss one of her prior strikes because they were both committed on the same occasion and thus should be treated as a single sentence enhancement.  We disagree.

17

## A.

### *Defendant's Prior Strikes*

The probation report described defendant's two prior strikes as follows:  On July 30, 1990, "defendant went to another female's residence and a physical altercation ensued with respect to a male both were apparently dating.  The defendant struck the victim about the head and face and also caused injuries to the victim's children.  All of the children and the victim sustained bruises and swelling, the weapon used was a knife and a telephone."

## B.

### *Analysis*

Defendant argues multiple strike sentence enhancements are not allowed for a single criminal act.  In support, she cites *People v. Burgos* (2004) 117 Cal.App.4th 1209, 1212 (*Burgos*).  In *Burgos*, the defendant and his accomplice "approached a man at a gas station and . . . demanded the victim's car while one of the companions told the victim that he had a gun.  [The defendant] and his companions were frightened off before they took the victim's car." (*Id.* at p. 1212, fn. 3.)  On these facts, the *Burgos* court concluded the trial court abused its discretion in failing to dismiss one of defendant's prior strike convictions for robbery and carjacking.  *Burgos* states "that the failure to strike one of the two prior convictions that arose from a single act constitutes an abuse of discretion." (117 Cal.App.4th at p. 1214, fn. omitted.)  The decision reasons that "where the two priors were so closely connected as to have arisen from a single act, it would necessarily constitute an abuse of discretion to refuse to strike one of the priors." (*Id.* at p. 1215.)

Here, the trial court was presented with defendant's admission of two prior strikes that did arise on the same occasion.  However, unlike *Burgos, supra*, 117 Cal.App.4th 1209, defendant's strikes involved *multiple victims*.  Defendant personally used a knife and a telephone to strike the victim and all of her children.  The injuries were not insignificant.  Instead, "[a]ll of the children and the victim sustained bruises and

18

swelling." Given the multiple acts of violence against multiple victims –- including children –- the trial court was not required to dismiss one of defendant's prior strikes. "Striking a prior serious felony conviction ' "is an extraordinary exercise of discretion, and is very much like setting aside a judgment of conviction after trial." [Citation.]' (*People v. McGlothin* (1998) 67 Cal.App.4th 468, 474.) Accordingly, such action is reserved for '[e]xtraordinary' circumstances. (*People v. Strong* (2001) 87 Cal.App.4th 328, 332.)" (*People v. Philpot* (2004) 122 Cal.App.4th 893, 907.) This case does not warrant the extraordinary remedy of dismissing one of defendant's prior strikes.

# V

## *Resentencing Under Proposition 36*

In her second supplemental opening brief, defendant contends we must vacate her three-strikes sentence and resentence her to a determinate term. Specifically, defendant argues that in light of the voter's approval of Proposition 36 on November 6, 2012 (codified as §§ 667, 1170.12 and 1170.126), and the principles established in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), she is entitled to automatic, nondiscretionary resentencing. Under *Estrada*, a legislative amendment that lessens criminal punishment is presumed to apply to all cases not yet final (the Legislature having deemed its former penalty too severe) unless there is a "saving clause" providing for prospective application. (*Id*. at pp. 742, 745, 748.)

The same argument was rejected in *People v. Yearwood* (2013) 213 Cal.App.4th 161, 170. In *Yearwood*, the court held the *Estrada* rule does not apply to Proposition 36 because section 1170.126 operates as the functional equivalent of a "saving clause" and defeats the presumption of retroactivity. Thus, *Yearwood* determined the voters intended a petition for recall of sentence to be the sole remedy available for prisoners who were serving an indeterminate life sentence imposed under the former three strikes law on Proposition 36's effective date without regard to the finality of judgment. (*Id*. at pp. 171–172.) Accordingly, the *Yearwood* court held Proposition 36 cannot be interpreted to

19

require automatic resentencing.  (*Id*. at p. 176.)  We agree.  For the reasons stated in *Yearwood*, we reject defendant's argument.[5]

DISPOSITION

The judgment is affirmed.


      HOCH    , J.


We concur:



     RAYE       , P. J.



     MURRAY   , J.

---

[5]    We note this issue is currently pending before the California Supreme Court. (*People v. Conley* (2013) 215 Cal.App.4th 1482; *People v. Lewis* (2013) 216 Cal.App.4th 468.)