[No. B085326. Second Dist., Div. Seven. Nov. 1, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL W. SHEA, Defendant and Appellant.

**COUNSEL**

Jonathan P. Milberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Linda C. Johnson and Brad D. Levenson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS (Fred), J.**—A jury convicted appellant of forcible rape (Pen. Code,[1] § 261, subd. (a)(2); count II), forcible sodomy (§ 286, subd. (c); count V), and forcible oral copulation (§ 288a, subd. (c); count IX).[2] The trial court found true four felony conviction allegations (§§ 667, former subd. (a), 667.6, former subd. (a)) and imposed a 35-year state prison sentence.

Appellant contends his trial counsel was ineffective, evidence was improperly admitted, there was instructional error, and of the three "priors" enhancements, one was improperly imposed.

Respondent contends appellant should receive 518, not 519, days of custody credits.

We reject appellant's contentions, decline to consider respondent's contention, and affirm the judgment.

### FACTUAL BACKGROUND

There being no insufficiency of evidence claim, the facts may be stated simply. Our perspective favors the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

In July 1993 the victim, Victoria V., was at the beach with her two young children and a young cousin, when appellant approached, sat down next to her, and started a conversation.

A few days later on July 16, they had a date. Appellant picked the victim up about 9 p.m. and they went to several bars in the Long Beach area where they drank (the victim had zombies), danced and played pool and darts. They left the last bar about 1:30 a.m., looked for an open restaurant so the victim would have something to eat with pain medication she had to take, could not find one open, and went to appellant's apartment.

---

[1]Statutory references, unless otherwise noted, are to the Penal Code.

[2]The jury found appellant not guilty of 11 other counts involving the same charges, the same victim, and the same day's occurrence. The jury hung on one count.

Once there, appellant gave the victim a plum but it was rotten so appellant gave her another. Then he grabbed the back of her head and threw her, face down, on his bed. The victim protested and appellant struck her hard with something on the back of her head, causing a big knot.

When the victim screamed, appellant threw her "around like an old rag doll," accomplishing repeated acts of intercourse, sodomy, and oral copulation.

Afterward, when appellant showered, the victim fled, naked, to a nearby residence.

Casey Simpson, appellant's neighbor, was awakened by a noise at his front door. He looked out onto his lighted porch and saw the victim naked and crying.

He opened his door, let her in, got a blanket, and gave her water. The victim was hysterical and sobbing, repeatedly saying she had been raped and sodomized.

The victim phoned her cousin Jesse. Then, when the victim told Mr. Simpson that the person was "still around here . . . looking for [her] . . . ." Mr. Simpson called 911. During that call, Mr. Simpson heard the victim say "Oh, my God" and shrink "into kind of a fetal position right there at the front door so you couldn't see [her]." At the same time, he saw appellant walking up the steps. Mr. Simpson told the 911 operator "Now would be a good time for the officers to get here because a guy is walking up my steps right now."

Mr. Simpson put the phone down and went to his door. Appellant, whom Mr. Simpson recognized, said "What has she been saying? Let me see her."

Mr. Simpson responded, "Look, the police are on their way. Just run. Just get out of here." Appellant "took off."

The police and paramedics arrived within minutes. The victim was transported to a hospital and examined. Dr. Bush, the examining doctor, observed multiple bruises to the victim's legs and tenderness to her neck. His findings were consistent with her having been raped and sodomized.

The victim had bruises on both arms, her shin, both legs, and a knot on her head. Her dress, a nurse's uniform, had been ripped. Her shoes, purse, and all her other clothes she had left in appellant's apartment.

Appellant left the scene, stayed with a friend in San Gabriel for two days, and then surrendered to his parole officer.

Thereafter, when the police searched appellant's apartment they found a small, wooden bat in a dresser drawer next to appellant's bed.

Appellant testified. He denied striking the victim. The defense was consent.

## DISCUSSION

*Ineffective assistance of counsel*

In considering appellant's ineffective assistance of counsel claim, we apply the following standard.

█ "To establish entitlement to relief for ineffective assistance of counsel the burden is on the defendant to show (1) trial counsel failed to act in the manner to be expected of reasonably competent attorneys acting as diligent advocates and (2) it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings. [Citation.] '[W]here the record shows that counsel's omissions resulted from an informed tactical choice within the range of reasonable competence, the conviction must be affirmed.' [Citation.] 'In some cases, however, the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged. In such circumstances, unless counsel was asked for an explanation and failed to provide one or unless there simply could be no satisfactory explanation, these cases are affirmed on appeal.' [Citation.]

"As the United States Supreme Court noted in *Strickland* v. *Washington*: 'Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." [Citation.] There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.' " (*People* v. *Lewis* (1990) 50 Cal.3d 262, 288 [266

Cal.Rptr. 834, 786 P.2d 892]. See also *People* v. *Mayfield* (1993) 5 Cal.4th 142, 175 [19 Cal.Rptr.2d 836, 852 P.2d 331].)

■ Appellant's first claim concerns the victim's 10-year-old misdemeanor conviction of welfare fraud and 11-year-old conviction of petty theft. Defense counsel sought to impeach her with judgments of those convictions and the trial court excluded that proof pursuant to *People* v. *Wheeler* (1992) 4 Cal.4th 284, 300 [14 Cal.Rptr.2d 418, 841 P.2d 938].

Appellant contends defense counsel was ineffective for not asking the victim on cross-examination if she had *committed* those offenses. (See *People* v. *Wheeler*, *supra*, 4 Cal.4th at p. 300, fn. 14.) We disagree.

This is *not* a case where "there simply could be no satisfactory explanation" for counsel's decision. The convictions were 10 and 11 years old and occurred when the victim was 20 or 21 years old. It is problematic, at best, whether the trial court would have admitted such evidence under Evidence Code section 352. Had the trial court permitted cross-examination of the victim on this subject there were significant risks to the defense. The victim, at the time of trial, was nine months pregnant and looked it. To the jury, in her condition, she must have appeared sympathetic and vulnerable. Questions about decade old minor offenses might have struck the jury as unfair and needlessly humiliating. Such questioning might have produced a backlash. Additionally, there was the risk the victim would either deny having committed the offenses or admit *and explain* them in such a way as to excite more sympathy than distrust.

■ Appellant next contends defense counsel was ineffective for not attempting to have appellant's rape conviction "sanitized" and for, instead, telling the jury about it during his opening statement. We disagree.

"While before passage of Proposition 8, past offenses similar or identical to the offense on trial were excluded, now the rule of exclusion on this ground is no longer inflexible." (*People* v. *Tamborrino* (1989) 215 Cal.App.3d 575, 590 [263 Cal.Rptr. 731] [proper to impeach robbery defendant with two prior robbery convictions].) Appellant has failed to show that a motion to sanitize his rape prior, had such a motion been made, would have been granted.

Additionally, the apparent defense strategy was to present defendant as someone who long ago had erred, had admitted his mistake, paid for it, and now had nothing to hide. Consistent with that strategy defense counsel, at the first opportunity, told the jury about appellant's long ago rape conviction.

Finally, since to present the "consent" defense appellant had to testify, there was a substantial risk that his testimony would enable the prosecutor to admit evidence of the earlier rape appellant had committed. In fact, that is what occurred.

*Evidentiary rulings*

■ The prosecutor cross-examined appellant about his rape conviction. Appellant claims the trial court erred in permitting this questioning. We disagree.

"The scope of inquiry when a criminal defendant is impeached with evidence of a prior felony conviction does not extend to the facts of the underlying offense." (*People* v. *Heckathorne* (1988) 202 Cal.App.3d 458, 462 [248 Cal.Rptr. 399].) However, if in "admitting" the prior felony conviction "the defendant first seeks to mislead a jury or minimize the facts of the earlier conviction" (*ibid.*) he may properly be questioned further. (*Id.* at p. 463.)

Appellant, during direct examination, sought to both mislead the jury and to minimize the facts of his earlier conviction.

During direct examination appellant testified that when he stood outside Casey Simpson's door and was told the victim accused him of raping her, his thoughts were: "Here I did nothing, and I'm being set up *again.*" (Italics added.)

Later, when his attorney asked what he went to prison for, he answered "[a]ttempted murder, attempted rape, kidnap *and that's it.*" (Italics added.) Omitted was his conviction of rape.

When his attorney, noticing the omission, asked, "And rape?" appellant answered "I took a deal. I don't know exactly what they charged me with, but I took a deal."

Under such circumstances, appellant was not immune from further questioning on cross-examination.

To the prosecutor's first question—what appellant meant by "it was part of a deal"—appellant answered, "I took a plea bargain deal. I didn't actually rape somebody. I attempted to rape somebody. And I admitted this."

The following colloquy, *not* objected to, then ensued:

"Q. So the rape you pled guilty to, you didn't actually do?

"A. It was part of a plea bargain.

"Q. Well, I just need to get this straight. So the woman that you admitted raping, that was Elizabeth [J.], right?

"A. Attempted rape."

At the sidebar conference requested by defense counsel, the prosecutor explained that appellant's prior crimes involved *two* women and two separate occasions. He had been convicted of attempting to rape (and murder) Michelle R. and of raping (and kidnapping) Elizabeth J. Because appellant was attempting to falsely imply there had been no rape, only a single incident of *attempted* rape—the prosecutor argued he was entitled to further question appellant. Defense counsel did not object to this further questioning and the trial court properly permitted it.

■ Under further cross-examination appellant admitted having attempted to rape and kill Michelle R. but *denied* raping or kidnapping Elizabeth J.

In rebuttal, the prosecutor sought to call Elizabeth J. The trial court required an offer of proof. The prosecutor represented that in March 1984 Ms. J. met appellant in a bar, agreed to go to a party with him, accompanied him in his vehicle, they followed her cousin to a 7-Eleven and then to the party, appellant did not stop at the party but instead drove to a different location, parked, appellant choked and punched her in the face, ripped off her clothing, removed her tampon, and raped her. Further, that when they were both outside the car and appellant was reentering, she fled to a nearby house and called her cousin.

The trial court, before ruling, considered protracted argument by counsel, *People* v. *Ewoldt* (1994) 7 Cal.4th 380 [27 Cal.Rptr.2d 646, 867 P.2d 757], and Evidence Code section 352. It held that *limited* testimony by Elizabeth Jackson would be admitted but for impeachment only. Accordingly, Ms. Jackson was permitted to testify that in March 1984 appellant had nonconsensual intercourse with her, struck and choked her, and ripped her clothes.

Appellant contends the trial court erred in admitting this evidence. We disagree. It was proper impeachment evidence *and* could have been admitted without limitation under *Ewoldt*.

*Ewoldt* held "that evidence of a defendant's uncharged misconduct is relevant where the uncharged misconduct and the charged offense are sufficiently similar to support the inference that they are manifestations of a

common design or plan." (*People* v. *Ewoldt, supra,* 7 Cal.4th at pp. 401-402.)

*Ewoldt* made clear "the plan need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense." (7 Cal.4th at p. 403.)

Here, the rape of Elizabeth J. was sufficiently similar to the rape of the charged victim to be admissible under *Ewoldt.* In both, appellant was in a bar, drank with the victim, took her to a private place, violently struck her, ripped her clothes off, and raped her. In both, the victim fled, naked, to a nearby residence.

The uncharged offense evidence also satisfied the four *Ewoldt* factors: it demonstrated the existence of a common design or plan; had an independent source; resulted in a conviction; and, considering appellant's ten-year imprisonment, did not involve a significant time gap. (*People* v. *Ewoldt, supra,* 7 Cal.4th at pp. 404-405.)

*Complained of instructions*

1. *CALJIC No. 2.21.2: Witness Willfully False*

■ Without objection, the trial court instructed the jury: "A witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others. You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you believe the probability of truth favors his or her testimony in other particulars." (CALJIC No. 2.21.2.)

Appellant contends the instruction was principally directed toward his testimony, altered the reasonable doubt standard, and was therefore error to give.

The contention has been often made and always rejected. (*People* v. *Beardslee* (1991) 53 Cal.3d 68, 94-95 [279 Cal.Rptr. 276, 806 P.2d 1311]; *People* v. *Lang* (1989) 49 Cal.3d 991, 1023-1024 [264 Cal.Rptr. 386, 782 P.2d 627]; *People* v. *Hill* (1993) 12 Cal.App.4th 798, 809-810 [15 Cal.Rptr.2d 806].) We find it without merit.

2. *CALJIC No. 2.52: Flight After Crime*

■ Without objection, the trial court instructed the jury: "The flight of a person immediately after the commission of a crime, or after he is accused of

a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine." (CALJIC No. 2.52.)

Appellant contends it was error to give the instruction because there was no evidence of flight. The contention is based upon a misreading of the record. Appellate counsel mistakenly states that when Mr. Simpson told appellant to leave, appellant "complied and went to the nearby home of his sister Kelly." In fact, as appellant testified, he left the scene and stayed with a friend in San Gabriel for two days. Only thereafter did appellant contact his sister and, with her, surrender to his parole officer.

Different inferences from the evidence were possible, including that appellant's attempted departure was prompted by a consciousness of guilt.

As our Supreme Court has recently stated: "An instruction in substantially this form [CALJIC No. 2.52] *must* be given whenever the prosecution relies on evidence of flight to show consciousness of guilt. (§ 1127c.) A flight instruction is proper whenever evidence of the circumstances of defendant's departure from the crime scene . . . logically permits an inference that his movement was motivated by guilty knowledge." (*People* v. *Turner* (1990) 50 Cal.3d 668, 694 [268 Cal.Rptr. 706, 789 P.2d 887], fn. omitted.)

Since there was evidence appellant fled from the crime scene an inference of guilty knowledge was possible. The *weight* of that inference, as the court's instruction clearly stated, was "a matter for the jury to determine."

There was no error in giving a flight instruction.

3. *CALJIC Nos. 2.00, 2.01, 2.02: Circumstantial Evidence*

■ Without objection, the trial court gave the standard instructions on circumstantial evidence. (CALJIC Nos. 2.00, 2.01, and 2.02.) Appellant now contends it was error to do so because "[t]he instructions failed to advise the jury that the inferences drawn from circumstantial evidence must be more likely than not to flow from the proven facts." The contention is not novel. As our Supreme Court has stated: "We repeatedly have rejected analogous contentions. (*People* v. *Noguera* (1993) [*sic*: a 1992 opinion] 4 Cal.4th 599, 633-634 [15 Cal.Rptr.2d 400, 842 P.2d 1160]; *People* v. *Johnson* (1992) 3 Cal.4th 1183, 1234-1235 [14 Cal.Rptr.2d 702, 842 P.2d 1]; *People* v. *Wilson* [(1992)] 3 Cal.4th 926, 942-943 [13 Cal.Rptr.2d 259, 838 P.2d 1212];

*People* v. *Jennings* (1991) 53 Cal.3d 334, 385-385 [279 Cal.Rptr. 780, 807 P.2d 1009].)" (*People* v. *Crittenden* (1994) 9 Cal.4th 83, 144 [36 Cal.Rptr.2d 474, 885 P.2d 887].) The contention is without merit.

We do agree, however, that the instructions should not have been given. This was a direct evidence, not a circumstantial evidence, case. Two percipient witnesses, the defendant and the victim, testified directly to the fact of consent—no consent. No inferences from their testimony were required. If defendant was believed the sexual acts were *with* consent. If the victim was believed they were *without* consent. As the comment to CALJIC No. 2.01 accurately states, "[t]he instruction should not be given when the problem of inferring guilt from a pattern of incriminating circumstances is not present." (Com. to CALJIC No. 2.01 (5th ed. 1988) p. 24.)

By instructing the jury "each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt" (CALJIC No. 2.01) the trial court may have caused the jury to mistakenly believe they could not find appellant guilty unless they believed that such facts as the victim's bruises, torn clothes, abandoned shoes, purse, undergarments, hysterical postrape condition, etc. were each proved beyond a reasonable doubt.

This, and the other circumstantial evidence instructions, imposed upon the People an additional inappropriate proof burden. It also conferred upon the defendant an inappropriate proof benefit.

### 4. *CALJIC No. 2.90: Reasonable Doubt*

Appellant contends the trial court erred in giving the standard reasonable doubt instruction. (CALJIC No. 2.90.) The contention is meritless. (*Victor* v. *Nebraska* (1994) 511 U.S. __ [127 L.Ed.2d 583, 114 S.Ct. 1239], affirming *People* v. *Sandoval* (1992) 4 Cal.4th 155 [14 Cal.Rptr.2d 342, 841 P.2d 862]; *People* v. *Freeman* (1994) 8 Cal.4th 450, 501 [34 Cal.Rptr.2d 558, 882 P.2d 249, 31 A.L.R.5th 888]; *People* v. *Brown* (1994) 28 Cal.App.4th 591, 602 [33 Cal.Rptr.2d 678]; *People* v. *Higareda* (1994) 24 Cal.App.4th 1399, 1414 [29 Cal.Rptr.2d 763].)

### *"Priors" enhancements*

The trial court imposed three sentence enhancements, each five years, two pursuant to section 667, former subdivision (a), the other pursuant to section 667.6, former subdivision (a). Appellant contends only two were properly imposed. Appellant is mistaken.

The facts are these. In a bifurcated proceeding, jury having been waived, the trial court found true four prior felony allegations. In People v. Shea (Super. Ct. L.A. County, No. A566571) appellant had been convicted of kidnapping, a serious felony (§ 667, former subd. (a)) and received a state prison sentence (§ 667.5). In the same case he was also convicted of rape, a violent sex offense (§ 667.6, former subd. (a)).

In a second case, People v. Shea (Super. Ct. L.A. County, No. A566949), appellant had been convicted of attempted murder and assault with intent to commit rape, both serious felonies (§ 667, former subd. (a)), and had been sentenced to state prison (§ 667.5).

Each of the two cases had separate victims and arose from separate incidents. Although appellant pleaded guilty to the four charges on the same day before the same judge and was later sentenced on all four convictions on the same day, the two cases were "brought and tried separately" (§ 667, former subd. (a); see People v. Smith (1992) 7 Cal.App.4th 1184 [9 Cal.Rptr.2d 491]), and appellant does not contend otherwise.

The trial court sentenced appellant as follows: count II, rape, the high eight-year term; count V, sodomy, a six-year midterm, consecutive; count IX, forcible oral copulation, a six-year midterm, consecutive. To this twenty-year sentence three 5-year enhancements were added: one serious felony enhancement (§ 667, former subd. (a)) from case No. A566949, the attempted murder and assault with intent to commit rape case, one serious felony enhancement (§ 667, former subd. (a)), the *kidnapping* conviction, from case No. A566571, and a violent sex felony enhancement (§ 667.6, former subd. (a)), the *rape* conviction, also from case No. A566571. The total sentence was 35 years.

Appellant, relying upon *People v. Jones* (1993) 12 Cal.App.4th 1106 [16 Cal.Rptr.2d 60], contends "that multiple punishments *for the same prior felony conviction* under Penal Code §§ 667(a) and 667.6(a) [are] unauthorized . . . ." (Italics added.)

Before considering appellant's contention and what *is* at issue, it may be helpful to clarify what is *not* at issue.

We are *not* concerned with imposition of section 667, former subdivision (a) and section 667.5 enhancements based upon the same felony conviction. (See *People v. Jones* (1993) 5 Cal.4th 1142 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) The instant judgment makes no reference to a section 667.5 enhancement.

We are *not* concerned, in this pre- "three strikes" case, with imposition of section 667, subdivision (a) and the "twice the term" provision of section 667, former subdivision (e)(1). (See *People* v. *Ramirez* (1995) 33 Cal.App.4th 559 [39 Cal.Rptr.2d 374].)

We are *not* concerned with using one violent sex prior (§ 667.6, former subd. (a)) to enhance three counts, each a violent sex conviction. (See *People* v. *Johnson* (1995) 33 Cal.App.4th 623 [39 Cal.Rptr.2d 463].)

We are *not* concerned with imposition of enhancements for two convictions on charges brought *together*, one a serious felony (burglary, § 667, former subd. (a)), the other a violent sex felony (rape, § 667.6, former subd. (a)) *but also alleged as a serious felony* (§ 667, subd. (a)). (See *People* v. *Flournoy* (1994) 26 Cal.App.4th 1695 [32 Cal.Rptr.2d 188].)

Finally, we are *not* concerned with the propriety of the two section 667, former subdivision (a) enhancements imposed by the trial court, one based on case No. A566949 (the convictions of attempted murder and assault with intent to commit rape) the other for kidnapping, in case No. A566571.

Our question is: was it proper for the trial court to impose a section 667.6, former subdivision (a) enhancement for rape, a conviction also brought and tried in case No. A566571?

We are aware of only one decision directly on point, *People* v. *Jones*, *supra*, 12 Cal.App.4th 1106, relied upon by appellant. As we explain, we believe *Jones* is in error.

Jones was convicted of multiple violent sex offenses, and multiple felony priors were found true, as were "age enhancements" (§ 667.9). Because of trial court sentencing errors, not here pertinent, *Jones* provided remand guidelines including those applicable to four priors found true. The four priors arose from two separate cases, each involving a robbery (a § 667, former subd. (a) enhancement) and a rape (a § 667.6, former subd. (a) enhancement). (See *People* v. *Jones*, *supra*, 12 Cal.App.4th 1106, 1110, fn. 3.)

*Jones* stated: "The trial court correctly concluded that enhancement terms could not be imposed under both sections 667, subdivision (a) and 667.6, subdivision (a). Sections 667, subdivision (a) and 667.6, subdivision (a) each provide for the imposition of an additional five-year term of imprisonment

for a recidivist who has sustained a denominated felony conviction after having been previously convicted of the same or another denominated felony in the past. The difference between the sections is that the offenses subject to the provisions of section 667, subdivision (a) include rape and forcible oral copulation (as well as sodomy by force, and lewd act on a child) among a more general listing of 'serious felonies' and section 667.6, subdivision (a) includes rape and forcible oral copulation among other listed serious felony sex offenses (which include rape in concert, lewd act by force, penetration by foreign object and sodomy by force). Nothing in either of these statutes or in their legislative histories suggests that the Legislature intended that both enhancement terms be applied where, as here, a single conviction (here each involving a count of robbery and a count of rape) qualifies for an enhancement under both sections. Given the overlap between the two statutes noted above, we are loathe to conclude that the Legislature had such distinct, differing policies in mind in enacting them that it intended both to apply to a single conviction which contained two or more qualifying counts. (See *People* v. *Medina* (1988) 206 Cal.App.3d 986 [254 Cal.Rptr. 89].) We conclude, therefore, as did the court below, that an enhancement term for a single prior conviction cannot be imposed twice, i.e., pursuant to both sections. The court must impose the enhancement term under one section only." (*People* v. *Jones*, *supra*, 12 Cal.App.4th at pp. 1115-1116, fn. omitted.)

With due respect to our Division Four colleagues, we must disagree.

When an accusatory pleading charges multiple counts and the defendant is convicted of multiple counts, the defendant has not suffered "a single conviction" (as *Jones* erroneously states), he has suffered *multiple* convictions. ▮ What appears to have confused *Jones*, as indicated by its reference to *People* v. *Medina*, *supra*, 206 Cal.App.3d 986 (no page citation is provided), is that multiple convictions resulting in a single term of state prison confinement constitute *one* prior for purposes of section 667.5. (§ 667.5, subd. (g); *People* v. *Medina*, *supra*, 206 Cal.App.3d at p. 990.)

But merely because, for example, a defendant may be subject to only one section 667.5 enhancement for his multiple convictions does *not* mean (contrary to *Jones*) no other enhancement may apply. *People* v. *Medina* is illustrative. In one case, Medina was convicted of three robbery counts, one grand theft count, and sentenced to state prison. *People* v. *Medina* held that those convictions subjected Medina to both sections 667.5 *and* 667, subdivision (a) enhancements.

 *Jones* fails to note the policies and requirements of sections 667, former subdivision (a)[3] and 667.6, former subdivision (a)[4] are different. The former applies to a large number of serious offenses, both violent sex offenses and nonviolent sex offenses. The latter applies only to a small number of violent sex offenses. The former applies only to "charges brought and tried separately," the latter applies whether or not the charges were brought and tried separately. (*People* v. *Lewis* (1987) 191 Cal.App.3d 1288, 1300-1301 [237 Cal.Rptr. 64].)

There is little doubt that in enacting section 667.6, the Legislature had a purpose distinct from section 667, former subdivision (a). Clearly, it intended that violent *sex* offenders, the most incorrigible subset of "serious" felons, be subject to greater prison terms than mere "serious" offenders. It accomplished that purpose by omitting from section 667.6 the "on charges brought and tried separately" restriction included in section 667, former subdivision (a).

We hold the trial court properly imposed a section 667.6, former subdivision (a) enhancement for a rape conviction, "brought and tried" with a kidnapping conviction, a separate section 667, former subdivision (a) enhancement.

*Custody credits*

Respondent requests we correct the judgment by subtracting one day of custody credits. When, as here, a party has failed to object to the custody credit error in the trial court, the custody credit error is de minimis, the

---

[3]In pertinent part the section provided: "In compliance with subdivision (b) of Section 1385, any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively.

"`. . . . . . . . . . . . . . . . . . . . . . .`

"(d) As used in this section 'serious felony' means a serious felony listed in subdivision (c) of Section 1192.7."

[4]In pertinent part, the section provided: "(a) Any person who is found guilty of violating subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 288.5, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person who has been convicted previously of any of those offenses shall receive a five-year enhancement for each of those prior convictions provided that no enhancement shall be imposed under this subdivision for any conviction occurring prior to a period of 10 years in which the person remained free of both prison custody and the commission of an offense which results in a felony conviction. . . ."

sentence is lengthy, and other issues dominate the appeal—we shall not entertain an issue of custody credit error.

## DISPOSITION

The judgment is affirmed.

Schiavelli, J.,* concurred. Johnson, Acting P. J., concurred in the judgment only.

A petition for a rehearing was denied November 27, 1995, and appellant's petition for review by the Supreme Court was denied February 14, 1996.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.