Filed 4/29/13  P. v. Quint CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GERALD H. QUINT,<br><br>    Defendant and Appellant. | H036833<br>(Santa Clara County<br>Super. Ct. No. CC757213) |

Defendant Gerald H. Quint appeals a judgment entered following his plea of no contest to making a false statement for the purposes of reducing the rate of workers' compensation insurance (Ins. Code, §§ 11760, subd. (a),  11880, subd. (a)), failing to file a corporate tax return (Rev. Tax Code, § 19706), failing to supply information to the Employment Development Department (EDD) (Unemp. Ins. Code, § 2117.5), failing to collect and pay unemployment insurance tax (Unemp. Ins. Code, § 2118.5).

The court ordered defendant to pay restitution in the amount of $2,794,162.14 to a number of insurers and government agencies, including $541,198 to the Franchise Tax Board.

On appeal, defendant asserts he was denied effective assistance of counsel because his attorney failed to object to the amount of restitution ordered to be paid to the Franchise Tax Board.

## STATEMENT OF THE FACTS AND CASE

Defendant was the general manager of New Century Transportation (New Century), a bus, limousine and shuttle service in Santa Clara County until 2004, when he became president. Susan Strommel, who was a codefendant with defendant in the lower court, was president, secretary and treasurer of New Century until 2004.

New Century had a contract with Santa Clara County's Valley Transportation Authority to provide shuttle services for Altamont Commuter Express train and San Jose's Downtown Area Shuttle.

From 2002 until 2005, New Century failed to report $11 million in revenue. Consequently, defendant and Strommel failed to pay over $480,000 in state corporate and personal income taxes. Between 2004 and 2006, New Century failed to report over $4.5 million in wages paid to its employees to the EDD. Defendant and Strommel deducted over $280,000 in personal income taxes from New Century employees, but did not remit that money to EDD.

Between 2003 and 2006, State Compensation Insurance Fund (State) provided workers' compensation insurance for New Century's employees. During that time, New Century under-reported its payroll to State, resulting in lost premium amounts of over $1.3 million. New Century also under-reported its payroll to additional workers compensation insurance carriers, resulting in unpaid premiums of approximately $1 million to First Comp Insurance and $181,680 to Insurance Corporation of New York.

In addition, New Century failed to file a California Corporate Income Tax Return for the tax year 2007, and failed to supply any information within the time required for that tax year.

In April 2008, in case No. CC757213, defendant was charged in a 48-count information with making a false statement for the purposes of reducing the rate of workers' compensation insurance (Ins. Code, §§ 11760, subd. (a), 11880, subd. (a);

2

counts 1, 3-5, 7), grand theft (Pen. Code, §§ 484-487, subd. (a); counts 2, 6 and 8), failing to file a corporate tax return (Rev. Tax Code, § 19706; counts 9-15), failing to supply information to the EDD (Unemp. Ins. Code, § 2117.5; counts 16-31), failing to collect and pay unemployment insurance tax (Unemp. Ins. Code, § 2118.5; counts 32-47), and falsely certifying a matter under penalty of perjury (Pen. Code, § 118: count 48). The information also alleged defendant was on bail during the commission of 14 of the charged offenses (Pen. Code, § 12022.1), and was presumptively ineligible for parole because of prior convictions (Pen. Code, § 1203, subd. (e)(4)). Finally, the information alleged an aggravated white collar crime enhancement for theft of over $500,000. (Pen. Code, § 186.11, subd. (a)(1) & (a)(2)).

In June 2009, in case No. CC939320, defendant was charged by information with one count of making a false or fraudulent statement to reduce workers compensation premium (Ins. Code, § 11760, subd. (a); count 1), one count of failing to file a tax return (Rev. Tax Code, § 19706; count 8), and one count of failing to supply information to the EDD (Unemp. Ins. Code, § 2117.5; count 9). The information also alleged defendant was on bail during the time he committed the offenses (Pen. Code, § 12022.1), and was presumptively ineligible for parole because of prior convictions (Pen. Code, § 1203, subd. (e)(4)).

On July 30, 2009, defendant entered no contest pleas in both cases pursuant to a negotiated disposition. In case No. CC757213, defendant pleaded no contest to making a false statement for the purposes of reducing the rate of workers compensation insurance (Ins. Code, §§ 11760, subd. (a), 11880, subd. (a); counts 1, 3-5, 7), failing to file a corporate tax return (Rev. Tax Code, § 19706; counts 9-15), failing to supply information to the EDD (Unemp. Ins. Code, § 2117.5; counts 16-18), failing to collect and pay unemployment insurance tax (Unemp. Ins. Code, § 2118.5; counts 3234). The remaining counts were dismissed with a stipulation that they could be considered for restitution.

3

Defendant admitted the on-bail enhancement, and the white collar crime enhancement with the agreement that he would be committed to state prison for a period of a minimum of five years, and a maximum of 10 years.

In case No. CC939320, defendant pleaded no contest to failing to file a tax return (Rev. Tax Code, § 19706; count 8).

Defendant was sentenced on both cases including the enhancements to a total of 10 years in state prison. The court ordered restitution in the amount of $2,794,162.14 to a number of insurers and government agencies. The restitution at issue in this appeal is that which was ordered to be paid to the Franchise Tax Board (FTB) in the amount of $48,916 for defendant's personal tax liability, and $492,282 for his corporate tax liability.

Defendant filed notices of appeal in both cases, after securing certificates of probable cause in the trial court.

## DISCUSSION

Defendant raises two arguments on appeal. First, that the abstract of judgment should be corrected to accurately reflect the amount of restitution ordered by the trial court, as stated in the recorder's transcript and the minute order. The Attorney General concedes this point.

In addition, defendant asserts he was denied effective assistance of counsel because his attorney failed to object to amount of the court's restitution order for reimbursement to the FTB.

### *Background Facts for Restitution to FTB*

Prior to his sentencing, defendant brought a motion to withdraw his plea in September 2010, asserting ineffective assistance of counsel in negotiating his plea bargain. The primary basis for the motion was defendant's assertion that he did not owe any taxes to the FTB.

4

At the hearing on the motion, defendant presented evidence from a forensic accounting expert, Shelley Lamar. Ms. Lamar reviewed New Century's corporate records and other information used by the district attorney in calculating restitution, and determined that New Century's income was overstated, and in fact, the company did not show a profit from 2002 through 2007. In addition, Ms. Lamar stated that she believed New Century lost about a million dollars each year. Ms. Lamar opined that New Century's tax liability was zero.

With regard to defendant's personal tax liability, Ms. Lamar testified that his tax liability was increased by approximately $45,000 because the FTB improperly carried forward his tax liability and insurance costs.

At the conclusion of the hearing, the court denied defendant's motion to withdraw his plea and set a sentencing date. Both the court and the defense attorney stated on the record that restitution had been discussed, but had not yet been resolved.

Prior to sentencing, the parties stipulated to a total restitution amount of $2,794,162.14. This amount is reflected in a minute order of September 10, 2011, which does not state whether the victims were present.

The court ordered restitution in the stipulated amount at sentencing on February 28, 2011. Defense counsel did not move to reduce the amount of restitution to be paid to the FTB. With regard to restitution to the FTB, the court ordered defendant to pay approximately $541,000, which was $116,000 *less* than the amount recommended by the probation department. In ordering restitution, the record reflects that there was a discussion in chambers, and the court referred to a document that is not included in the record on appeal. There is no information in the record as to why the court reduced the restitution amount to FTB by $116,000.

5

*Ineffective Assistance of Counsel*

The amount of restitution at issue in defendant's claim of ineffective assistance of counsel is that which was ordered to be paid to the FTB. Specifically, the court ordered defendant to pay the FTB $48,976 in personal taxes, and $492,282 in corporate taxes. Defendant asserts his counsel at sentencing should have objected to the amounts ordered, because they were not based on competent evidence, and were contrary to defendant's own evidence of taxes owed that was presented at his motion to withdraw his plea.

With regard to the competency of the evidence used to support the restitution order to the FTB, defendant argues his counsel at sentencing should have objected to the lack of evidence to support the court's order. Specifically, the probation officer's report stated that despite repeated attempts to do so, the officer was not able to contact anyone at FTB to substantiate the amount defendant owed in back taxes. Instead of substantiation from the FTB as to the amount defendant may have actually owed, the probation officer recommended that the trial court order defendant to pay restitution to FTB "[a]ccording to the Deputy District Attorney's notes, approximately $657,798.00." There was no other evidence presented at the trial court for the amount defendant may have owed to the FTB.

Defendant additionally argues his attorney was ineffective at sentencing for failing to object to the restitution amount to be paid to the FTB based on the evidence presented at the motion to withdraw his plea that he did not owe taxes at all.

To prevail on a claim of ineffective assistance of counsel, first, defendant must establish that " 'counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citation.]" (*People v. Ledesma* (1987) 43 Cal.3d 171, 216, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 688.) However, "[a] reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's

6

actions and inactions can be explained as a matter of sound trial strategy." (*People v. Carter* (2003) 30 Cal.4th 1166, 1211.)  In other words, defendant bears a burden that is difficult to carry on direct appeal.  (*People v. Lucas* (1995) 12 Cal.4th 415, 436.)  "[I]f the record sheds no light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for an explanation and failed to provide one, or there could be no satisfactory explanation for counsel's performance." (*People v. Castillo* (1997) 16 Cal.4th 1009, 1015.)

The appellate record in this case reveals very little about defense counsel's thinking or decisions regarding the amount of restitution owed to the FTB.  The court noted that a discussion was had in chambers regarding restitution, but there is no record of the details of the meeting.  The total amount of restitution in this case was agreed to by stipulation of the parties after defendant's motion to withdraw his plea and before his sentencing.  In addition, the record shows the final amount ordered to be paid to the FTB was approximately $116,000 *less* than that which was represented by the probation department.

In a case such as this, where it does not affirmatively appear on the face of the record that counsel lacked a tactical reason for not objecting to the amount of restitution owed to the FTB, a claim for ineffective assistance cannot be sustained on direct appeal. (See *People v. Shea* (1995) 39 Cal.App.4th 1257, 1265.)  Here, it is impossible to say that counsel could not have had sound tactical reasons for failing to object to the amount of restitution.  For all we know from the record, it was defense counsel's efforts, and the testimony of the forensic account, that lead to the reduction in the amount of restitution owed to the FTB by $116,000.  Indeed, counsel may have made a tactical decision not to object or request further proceedings on the issue knowing that it might lead to the court ordering a higher amount.  There is simply no way to tell absent more information that defense counsel's actions regarding restitution were not based on sound legal tactics.

7

Accordingly, to have a chance of success, defendant's claim of ineffective assistance must be presented by means *other* than direct appeal.

"In general, the proper way to raise a claim of ineffective assistance of counsel is by writ of habeas corpus, not appeal." (*In re Dennis H.* (2001) 88 Cal.App.4th 94, 98, fn.1.) That is because "[t]he establishment of ineffective assistance of counsel most commonly requires a presentation which goes beyond the record of the trial [and] . . . . [a]ction taken or not taken by counsel at a trial is typically motivated by considerations not reflected in the record." (*In re Arturo A.* (1992) 8 Cal.App.4th 229, 243.) Unless there simply could be no satisfactory explanation for trial counsel's tactics, a party alleging ineffective of counsel cannot seek review of his or her claim by way of direct appeal. (*In re Darlice C.* (2003) 105 Cal.App.4th 459, 463.) Here, where the record sheds no light on what considerations motivated counsel, we cannot say that counsel's failure to object to the amount of restitution ordered to be paid to the FTB was not the result of some tactical choice.

### *Correction of the Abstract of Judgment*

Defendant asserts, and the Attorney General concedes that the abstract of judgment must be corrected to accurately reflect the amount of restitution ordered by the court. Both the reporter's transcript and the minute order show that the court ordered defendant to pay $37,466 in restitution to Endurance, jointly and severally with codefendant. However, the abstract of judgment states that the amount owed to Endurance is $371,466.

As with other clerical errors, discrepancies between an abstract and the actual judgment as orally pronounced are subject to correction at any time, and should be corrected by a reviewing court when detected on appeal. (*People v. Mitchell* (2001) 26 Cal.4th 181, 188.)

8

## DISPOSITION

The abstract of judgment shall be modified to reflect the correct amount of restitution to be paid to Endurance is $37,466.  The judgment is affirmed.

_____

RUSHING, P.J.

WE CONCUR:

_____

ELIA, J.

_____

GROVER, J.

9