Filed 7/21/14  P. v. King CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063926 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD239052) |
| NEOPLEAN DEVON KING, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Parag Agrawal, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Neoplean Devon King of evading officers with reckless driving (Veh. Code, § 2800.2, subd. (a)) and possession of concentrated cannabis (Health & Saf.

Code, § 11357, subd. (a)).  King admitted four prison priors (Pen. Code,[1] § 667.5, subd. (b)) and one serious/violent prior felony conviction (§ 667, subds. (b)-(i)).  King was sentenced to a determinate term of eight years in prison.

King appeals contending the prosecutor committed misconduct by questioning King about the length of his prison term for one of his prior convictions.  He also contends the trial court erred in overruling his objection to such questions.  We agree the court erred in overruling a timely objection to an irrelevant question.  We are satisfied however, that there was no prosecutorial misconduct and that any error was harmless.  Accordingly, we will affirm the convictions.

STATEMENT OF FACTS

At about 12:15 a.m. on January 25, 2012, a San Diego police officer driving a marked patrol car observed a Ford Expedition driving north on Euclid Avenue at a high rate of speed.  The car was traveling at 60 or 70 miles per hour in a 25 mile per hour area.  The officer was afraid the car would not be able to stop for a red light and might endanger pedestrians.  He then drove his patrol car to block eastbound/westbound traffic.  The officer shined his spotlight on the oncoming car to try to get the driver to slow down.

As the car approached the intersection the light turned green and the car proceeded through the intersection.  The officer continued to direct his spotlight on the car.  He was able to see the driver who he later identified as King.

---

[1]     All further statutory references are to the Penal Code unless otherwise specified

2

The officer turned his patrol car around and followed King's vehicle. The patrol car's emergency lights were turned on and the officer also activated the siren. King accelerated his car to 50 or 60 miles per hour. He made a turn on to Whiteman Street and headed in the wrong direction on a one way street. The officer followed King with his emergency lights and siren on.

Whiteman Street ends with an abrupt curve. The officer observed King's car slow down and saw King get out of the car before it stopped. The car continued forward until it ran into an electrical pole.

When King got out of his car he ran away. The officer followed him until King tripped on a curb. The officer then detained King at gunpoint until other officers arrived. A search of King produced a baggie with a small, but useable amount of concentrated cannabis.

King testified in his own behalf. He said he was driving his brother's vehicle and that he was driving from the San Diego airport. King was returning to La Mesa and had missed his turn off from the freeway. That caused him to travel on Euclid Avenue. King testified that as he reached Euclid he experienced sudden acceleration of the vehicle, which he was unable to stop. He had driven the vehicle before and had not previously experienced that problem.

King said he turned on to Whiteman Street in order to avoid pedestrians since he could not stop the car. He denied seeing the police car, or its emergency lights and did not hear the siren.

3

King said that once he was on Whiteman he realized he would not be able to stop so he jumped out and landed on his feet. He then stumbled and fell to the ground. He said he next woke up in the hospital and was not aware of police officers at the scene. On redirect testimony King said he was aware that police were there when the officers shined a light in his face while he was on the ground.

King testified that after he went to the hospital he was not aware of any criminal proceedings until he was picked up on a warrant in June 2012. The court took judicial notice of the fact that King was arraigned in this case in April 2012.

DISCUSSION

During the cross-examination of King, the prosecutor was permitted to question King regarding his activities between the time of his last prior conviction in 2003 and the time of his employment approximately 18 months before the events in this case. He contends such evidence was irrelevant and prejudicial and that the prosecutor committed misconduct by asking such questions.

A. Background

Prior to trial, the court ruled King could be impeached with his three prior felony convictions, the last of which was in 2003. King does not challenge that ruling. The trial court also ruled that King's probation or parole status was not admissible and bifurcated the trial of the prior convictions.

On direct examination King testified he was married and that he had worked in brick masonry and construction for the last one and a half years. King's testimony continued:

4

"[Defense counsel]: Before I talk about the facts of this case, I want to just bring this out there. You haven't lived a very clean life; is that fair to say?

"A: Yeah. That's fair to say.

"[Defense counsel]: Okay. And you've suffered some convictions in the past?

"A: Yeah. A couple.

"[Defense counsel]: Is it fair to say you suffered three felony drug sales convictions?

"A: Along the lines like possession, possession to sale.

"[Defense counsel]: And the last one was in--the last conviction was in 2003, right?

"A: Yes, sir."

On cross-examination the following took place:

"[Prosecutor]: Okay. And you also testified when your attorney asked you regarding your criminal history, you admitted that you had three felony drug-related convictions, correct?

"A: Yes.

"[Prosecutor]: And just to break those down a little bit, you've had from 1998, you have a felony conviction for transportation of methamphetamine; is that correct?

"A: Yes.

"[Prosecutor]: And from 2003, you have a felony conviction for transportation of methamphetamine, correct?

"A: Yes.

"[Prosecutor]: And from the same year, you have a case, a felony conviction for possession for sales of methamphetamine, correct?

5

"A: I'm not--for what? The same year?

"[Prosecutor]: Do you have a conviction also from 2003 for possession for sale of methamphetamine?

"A: Two different cases? It was the same case.

"[Prosecutor]: But nevertheless have two separate convictions from that?

"A: Yes, I do.

"[Prosecutor]: As counsel pointed out, 2003 was your last conviction, correct?

"A: Yes, ma'am.

"[Prosecutor]: What have you been doing in between 2003 and working for the masonry company?

"[Defense counsel]: I object, your honor, to the line of questioning.

"The Court: Well, I'll allow it. Overruled.

"[Defense counsel]: I would object. I don't think it's relevant.

"The Court: Overruled. You can answer.

"A: Pretty much try to get my life back intact. Want to be a better father to my kids, a better husband.

"[Prosecutor]: Where have you physically been since 2003 up until you got the job a year and a half ago?

"A: Fighting fires, firefighter."

The court then allowed further questions regarding King's imprisonment, over defense objections:

"[Prosecutor]: Mr. King, you testified you had been fighting fires. Where have you been doing that?

6

"A: Up in San Bernardino for a canyon conservation camp.

"[Prosecutor]: What capacity were you doing that?

"A: Well, started off as a 10-year sentence but eventually I worked my way down to fire camp on good behavior. I spent 4 years 11 months fighting fires.

"[Prosecutor]: You were fighting fires as a prisoner with the State of California?

"A: I would say that, but we was looked at as wildland firefighters.

"[Prosecutor]: But you were, in fact, fighting fires, as a prisoner for the State of California, correct?

"A: Yes."

Immediately after, the court read the following admonishment, "I am going to go ahead and from that answer I'm going to strike the time period of the prison term as not being relevant. It is not something for the jury to consider, just the time period of his incarceration."

On redirect examination, defense counsel again raised the issue of appellant's history as a "firefighter." Appellant testified that being a firefighter was a privilege. Then defense counsel asked:

"[Defense counsel]: You said you were doing it for four years or so?

"A: Four years 11 months."

The trial court admonished the jury to disregard the "time period" of King's prison term as being irrelevant.

7

## B. Legal Principles

Generally speaking, a defendant may be impeached with evidence the person has suffered prior felony convictions which necessarily involve moral turpitude. (*People v. Castro* (1985) 38 Cal.3d 301, 306.) The admissibility of such evidence is subject to the sound discretion of the trial courts having in mind the requirement to evaluate the prejudicial effect of such evidence in light of Evidence Code section 352. (*People v. Wheeler* (1992) 4 Cal.4th 284, 295.)

The question of whether in addition to the fact of the conviction the prosecutor can ask questions about the length or nature of the defendant's prior incarceration has not been resolved by the Supreme Court. In *People v. Watson* (2008) 43 Cal.4th 652, 685 (*Watson*), the court noted that prior to the enactment of Proposition 8 (Cal. Const., art. I, § 28, subd. (f)), cases held that Evidence Code section 788 did not allow evidence beyond the fact of the conviction to be used to impeach a defendant. (*People v. Smith* (1966) 63 Cal.2d 779, 790.) Given the expanded scope of admissibility of relevant evidence since the enactment of Proposition 8, the court in *Watson* recognized there was an issue regarding admissibility of such evidence, but declined to decide whether such additional evidence could be admitted. Thus the case does not provide authority for the use of the details of a defendant's imprisonment when a prior felony conviction is admitted solely for impeachment.

The People do contend that where the defendant seeks to mislead the jury concerning the length and circumstances of his prior conviction, that evidence of the

details of the conviction and sentence could be relevant. (*People v. Shea* (1995) 39 Cal.App.4th 1257, 1267; *People v. Heckathorne* (1988) 202 Cal.App.3d 458, 462.)

Like the Supreme Court in *Watson*, *supra,* 43 Cal.4th 652, we decline to decide whether details of imprisonment are admissible for impeachment because, as we will discuss below, the evidence elicited by the prosecution was irrelevant and should have been excluded on that ground.

Prosecutorial misconduct occurs when the prosecutor engages in conduct that is reprehensible and deceptive which renders the criminal trial unfair. (*People v. Morales* (2001) 25 Cal.4th 34, 44; *People v. Stanley* (2006) 39 Cal.4th 913, 951.)

## C.  Analysis

In this case the proffered basis for the use of the prior felony convictions was to impeach King's credibility.  King admitted the prior convictions in his direct testimony. There he accurately testified his last felony conviction was in 2003.  The prosecutor argued that such statement was "misleading" because it implied King had been leading a law abiding life in the interim, when in reality he was in prison for much of that time and could not commit new crimes.  We find no basis for such argument.

King not only admitted the convictions, he also admitted not living a "clean life," and that he was employed in construction at times in the year and one half prior to the events in this case.  All of which is correct as far as we can discern from this record.  The question that created the problems in this case dealt with what King had been doing between the time of his 2003 conviction and when he began working in construction. Respectfully, there is nothing in that question, which raises an issue relevant to King's

9

credibility. Plainly the prosecutor knew that King had been in custody most of that time. Other than showing the length of his incarceration, the question did not bear on any relevant issues in this trial.

Evidence Code section 210 defines relevant evidence as "evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."

It is important to make clear that the only basis of admissibility of the felony convictions in this case is impeachment of credibility. (Evid. Code, § 788.) The fact that King was incarcerated for the period from 2003 until approximately two years before this offense simply does not have a tendency in reason to prove or disprove a *material* fact.

Even if we were to give some weight to the prosecutor's contention that the jury knew King had been incarcerated, and thus could not have committed new crimes, we would find the prejudicial effect of such testimony plainly outweighs any probative value. (Evid. Code, § 352.)

The testimony which followed after the court overruled the defense objection demonstrates the error of admitting irrelevant evidence of incarceration. King gave a somewhat evasive answer that he had been a firefighter, which indeed he had been. However, the answer then led to questions about where and for whom he was a firefighter. Obviously the prosecutor wanted the jury to know King had not been a firefighter as the public might understand that term. Rather, he was a prison inmate serving in a prison camp setting. Of course, all of the discussion is far afield from the

10

purpose of allowing the use of prior felony convictions for impeachment. The discussion got sufficiently off the point that the court then admonished the jury to disregard the evidence of the length of King's incarceration. We are satisfied that the trial court erred in overruling the defense objection to questions relating to King's period of incarceration.

Had the court sustained the objection, the entire discussion of where, when and for whom King had been a firefighter would not have been presented to the jury and the court's admonition would not have been necessary.

We turn then to the question of prejudice. Although we have found the trial court erred in its evidentiary ruling, we do not find, in light of the entire record that in the absence of the error a different result would have been likely. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

In a later *Watson* case, *Watson*, *supra,* 43 Cal.4th at page 686, the court applied the harmless error analysis to questions about details of a prior felony conviction offered for impeachment. There the court declined to answer the question of whether the scope of such impeachment evidence was now broader than Evidence Code section 788, following the passage of Proposition 8. The court found resolution of the question unnecessary given that any error was harmless in light of the entire record. We reach the same conclusion here.

At the outset we note the evidence of King's guilt is overwhelming. His explanation of the events was at best highly suspect. The police officer had directed his spotlight on King as he approached the intersection. The officer then followed King for some distance with the patrol car's emergency lights and siren on. King's high speed

11

driving and evasive action are consistent with his awareness of a police car in pursuit. King's explanation of the events out of the car were also questionable. He first testified he woke up in the hospital without any knowledge of police involvement. Yet he later testified he was aware of the police presence at the crash scene.

The jury was properly aware King had not always been law abiding and that he had three prior felony convictions. Further, the court gave an admonition to the jury to disregard the evidence of his period of incarceration, in order to minimize any prejudice. In our review of the record we find the prosecutor did not raise the issue of the details of King's incarceration in her argument. Defense counsel, on the other hand, was able to use the testimony about King's work as a firefighter as evidence of his efforts to rehabilitate himself.

In short, there is no reasonable likelihood that there would have been a different result as in the absence of the error. (*People v. Watson, supra*, 46 Cal.2d at p. 836.)

Regarding the allegation of prosecutorial misconduct, we find no basis for such a finding in this record. There is no indication of deceit, or inappropriate behavior. Rather, the prosecutor pursued a theory of relevance that the trial court accepted. The fact we have disagreed with the trial court's initial ruling does not in any fashion indicate any form of misconduct by the prosecutor in this case. Thus, we reject King's assertion that misconduct occurred.

DISPOSITION

The judgment is affirmed.


                                                    HUFFMAN, Acting P. J.

WE CONCUR:


        HALLER, J.


        McINTYRE, J.

13